**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | |
|---|---|
| Shirley Adams, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 8:14-cv-04023-PWG |
| v. | ) |
| | ) |
| The American Federation of State, | ) |
| County and Municipal Employees (AFSCME) | ) |
| International, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT AFSCME'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS THE CLAIMS ASSERTED
AGAINST AFSCME IN PLAINTIFFS' AMENDED COMPLAINT**

**INTRODUCTION AND SUMMARY**

Through their claims against lead defendant American Federation of State, County and

Municipal Employees ("AFSCME")—an international labor union comprised of affiliated local

labor unions throughout the country including Maryland—Plaintiffs seek to overturn two

disciplinary decisions issued by an AFSCME judicial panel based on misconduct charges brought

by several union members against lead Plaintiff Shirley Adams.[1]  In the 172 separately numbered

paragraphs of their meandering Amended Complaint, Plaintiffs purport to state no fewer than ten

---

[1] The other defendants to this lawsuit are AFSCME Local 2250 and several individual members of
Local 2250's Executive Board ("Individual Defendants"), and the other plaintiffs are Local 2250
members Terry Allen and Todd Kingman.  It is AFSCME's understanding that Defendant Local
2250 and the Individual Defendants will be filing a separate motion to dismiss the claims asserted
against them by Plaintiffs in their Amended Complaint.

separate claims for relief against AFSCME, including, *inter alia*, breach of the AFSCME

Constitution, violations of the Labor-Management Reporting and Disclosure Act ("LMRDA"),

abuse of process, unjust enrichment and breach of fiduciary duties.

Although Plaintiffs' Amended Complaint is hardly a model of clarity—and is particularly

unclear with respect to the issue of which Defendants are alleged to have committed what particular

acts of wrongdoing—the thrust of Plaintiffs' complaint against AFSCME appears to be that the two

AFSCME Judicial Panel decisions adverse to lead Plaintiff Shirley Adams rest on a

misinterpretation of the governing union constitutional documents and thus were wrongly decided

and should be overturned by this Court.  But as we show in this Memorandum, Plaintiffs' litigation

attack on the correctness of these two Judicial Panel decisions under the governing union

constitutional documents is misplaced and unavailing.

In this regard, there is a strong federal policy against judicial interference in internal union

disputes, *see generally Calhoon v. Harvey*, 379 U.S. 134, 140 (1964)—including, of direct

relevance here, internal union disputes over the imposition of discipline on union members by a

duly-authorized union adjudicatory body, *see Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S.

233, 246 (1971)—and, in keeping with that policy, courts owe substantial deference to a union's

interpretation and application of its own governing constitutional documents, *see e.g. Int'l

Longshoremen's Ass'n, Local 333 v. Int'l Longshoremen's Ass'n*, No. 99-cv-2653, 2001 WL

34767972, at *3 (D. Md. Mar. 30, 2001), *aff'd*, 26 F. App'x 220 (4th Cir. 2002).  The limited role of

the courts in the disciplinary context is to ensure that a union member has been afforded due

process, including a full and fair hearing, prior to the imposition of discipline against that member.

*See Hardeman*, 401 U.S. at 246-47.  And while, to be sure, Plaintiffs' Amended Complaint does

contain the conclusory allegation that lead Plaintiff Shirley Adams was not afforded a full and fair

hearing prior to the imposition of discipline against her by the AFSCME Judicial Panel, Plaintiffs'

Amended Complaint does *not* point to *any facts* that lend *any* credence to this conclusory

allegation—an omission that is fatal to Plaintiffs' claims against AFSCME under well-settled

federal court pleading standards.

In short, although Plaintiffs strike out broadly against AFSCME by claiming that

AFSCME's two Judicial Panel decisions adverse to lead Plaintiff Shirley Adams infringed Adams'

rights under the AFSCME Constitution, federal statutes and the common law, there is no legal

substance to any of those myriad claims, and those claims should be dismissed in their entirety

under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

### A.  The Parties to this Litigation

Lead Defendant AFSCME is an international labor union headquartered in Washington,

D.C.  Ex. A at Art. I.[2]  To carry out its mission, AFSCME charters local unions, including

Defendant Local 2250, to represent workers in collective bargaining with their employers.  *See* Am.

Compl. (Doc. 32) ¶ 4.  These local unions primarily represent public sector workers, but certain

local unions also represent private sector employees.  *See* Ex. A at Art. II (International objectives

include promoting "the organization of workers in general and public employees in particular"),

---

[2] The AFSCME Constitution is Exhibit A to the accompanying Declaration of Caitlin Kekacs ("Kekacs Decl.").  The Court may consider this document and the other documents included as Exhibits to the Kekacs Decl. without converting this motion to a motion for summary judgment because, as more fully described herein, each of these documents is "integral to and explicitly relied on in the complaint."  *Mbongo v. JPMorgan Chase Bank, N.A.*, No. 14-cv-1620, 2014 WL 3845443, at *2 (D. Md. Aug. 4, 2014) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *aff'd*, 589 F. App'x 188 (4th Cir. 2015)).

Art. IX (subordinate bodies).

AFSCME and Local 2250 entered into an Affiliation Agreement in September 1971, which provides, *inter alia*, that Local 2250 "retains exclusive authority to establish its own bargaining and other organizational goals and generally carry on its affairs in accordance with its own policies."[3] Ex. B ¶ 5; *see also* Am. Compl. ¶¶ 3-5. Local 2250 is the "sole and exclusive bargaining agent" for a bargaining unit of employees of the Board of Education of Prince George's County, meaning that Local 2250 has sole authority to negotiate collective bargaining agreements governing the terms and conditions of employment for those employees. *See* Am. Compl. ¶ 6.

The Local 2250 Constitution provides that the Local "shall have its business conducted by an Executive Board duly elected by the total members of the departments they represent."[4] Ex. C at Art. VIII, § 1. The Individual Defendants are members of Local 2250's Executive Board. Am. Compl. at p. 1.

Lead Plaintiff Shirley Adams was elected President of Local 2250 in 2010, and re-elected to that position in 2012. Am. Compl. ¶¶ 10, 17. Plaintiffs Terry Allen and Todd Kingman are members of Local 2250. *Id.* ¶ 49.

**B. Judicial Panel Charges and Decisions**

In 2012, Defendant Shirley Kirkland, then-Vice President of Local 2250, filed misconduct charges against Adams with the International's Judicial Panel, which were docketed as Case No. 12-156. Am. Compl. ¶¶ 30-31. The Judicial Panel is an adjudicatory body established by Article XI of the AFSCME Constitution and authorized under that Constitution to, among other things, take

---

[3] The Affiliation Agreement is Exhibit B to the Kekacs Decl. *See supra* note 2.

[4] The Local 2250 Constitution is Exhibit C to the Kekacs Decl. *See supra* note 2.

evidence on and determine the validity of misconduct charges brought against AFSCME members by other members.  *See* Ex. A at Art. X, XI.  The AFSCME Constitution provides numerous procedural safeguards in the conduct of a Judicial Panel hearing.  For example, the accused member must be served with specific, written charges signed by the charging party.  *Id.* at Art. X, §§ 6, 10. The accused member has the right to be represented by counsel, to present and cross-examine witnesses, and to be presumed innocent until proven guilty.  *Id.* at Art. X, § 12.  In cases such as Adams', where the accused member is not an International officer, a single Judicial Panel member is appointed to serve as the trial officer, after both parties have had the opportunity to strike up to two Judicial Panel members.  *Id.* at Art. XI, § 8.  After completion of the trial, the Judicial Panel must issue a written decision that includes a statement of charges, a summary of the evidence supporting and refuting the charges, findings of fact, conclusions of law, and an assessment of a penalty, if any.  *Id.* at Art. XI, § 12.

Members may appeal a Judicial Panel decision made by a single trial officer to the full Judicial Panel, by filing a notice of appeal within thirty days after receipt of the decision.  *Id.* at Art. XI, § 14.  As a final step, cases heard by the full Judicial Panel can be appealed to the next International Convention, the highest governing body of AFSCME.  *Id.* at Art. XI, § 15.

Kirkland asserted multiple charges against Adams; several were dismissed by the Judicial Panel Chairperson prior to the hearing.[5]  Ex. D at 1.  An evidentiary hearing on the remaining four charges was held before Judicial Panel member Jim Tucciarelli on February 4, 2013.  *Id.*

---

[5] The Judicial Panel Decision in Case No. 12-156 is Exhibit D to the Kekacs Decl.  *See supra* note 2.

The Judicial Panel trial officer issued a decision on March 21, 2013, which was partly in Adams' favor and partly adverse.  *See* Ex. D at 5-7.  The trial officer found Adams guilty of two separate violations of Article XI, section 2 of the Local 2250 Constitution, which provides, "Except to the extent specified in this constitution, no officer of the Union shall have the power to act as agent for or otherwise bind the Union in any way whatsoever."  Specifically, the trial officer found that, without receiving authorization from the Local 2250 Executive Board, Adams (a) voluntarily recognized the Local 2250 staff as members of Local 2 OPEIU; and (b) signed a $5,000 retainer agreement with the law office of C. Sukari Hardnett.[6]  Ex. D at 6.

With respect to the retainer agreement, the evidence at trial showed that Adams signed the agreement on April 15, 2011 without the knowledge or authorization of the Local 2250 Executive Board, and did not even inform the Executive Board of her actions in entering into the agreement until June 22, 2011.  *Id.* at 2-3.  Adams, for her part, did *not* dispute this evidence, but instead argued to the Judicial Panel that her actions in entering into the retainer agreement without the knowledge or authorization of the Local 2250 Executive Board were justified by the claimed exigencies of the situation.  *Id.* at 4; *see also* Am. Compl. ¶ 35 ("[T]he Board of [Local 2250] was made aware of the debt shortly after it was executed on April 14, 2011 [sic]; the Board was noticed [sic] of the existence of the contract at the next scheduled board meeting.").  The trial officer rejected this proffered excuse for acting in a manner directly contrary to the terms of Article XI, section 2 of the Local 2250 Constitution.  Ex. D at 6-7.

As a penalty for her adjudicated misconduct, the trial officer issued "a formal reprimand accompanied by a formal warning against repetition of the acts she was found guilty of.  Relative to

---

[6] Adams was found not guilty of two other charges.

the contract with the law firm, unless the local can come to some kind of amicable settlement with respect to the outstanding invoice they received from the [l]aw firm of C. Sukari Hardnett with the full approval of the membership, [Adams] is ordered to pay the fees out of her own funds." *Id.* at 7. Adams does not allege that she appealed this ruling to the full Judicial Panel. *Compare* Am. Compl. ¶ 43 (referencing appeal of later Judicial Panel decision).

Local 2250 was unable to reach a settlement of the matter with Attorney Hardnett. Am. Compl. ¶ 32. In March 2013, Attorney Hardnett filed suit in state court against Local 2250, seeking to recover the $5,000 fee provided for under the retainer agreement she had signed with Adams. *Hardnett v. AFSCME Local 2250*, No. 0602 005204 2013 (Montgomery County Dist. Ct.). After a bench trial, the Montgomery County District Court entered judgment for Attorney Hardnett, ruling that "[t]he issue before the court is whether or not Ms. Hardnett entered into a contract with someone who had the *apparent* authority to bind the defendant. And I'm satisfied that the evidence shows by a preponderance that [Adams] did." Ex. E at 4 (emphasis added). [7] The court acknowledged the Judicial Panel's decision in Case No. 12-156, but noted that how the Judicial Panel's interpretation respecting Adams' *actual* authority under the Local 2250 Constitution "plays out between the union administration and the union president is *not* the issue before the Court today." *Id.* (emphasis added).

Adams did not pay the $5,000 retainer out of her own funds, as ordered by the Judicial Panel. Accordingly, on January 14, 2014, Kirkland and other members of the Local 2250 Executive Board filed additional charges against Adams with the International's Judicial Panel, which were

---

[7] A transcript of the Court's ruling in *Hardnett v. AFSCME Local 2250*, No. 0602 005204 2013 (Montgomery County Dist. Ct. May 22, 2013) is Exhibit E to the Kekacs Decl. *See supra* note 2.

docketed as Case No. 14-02.[8]  Am. Compl. ¶ 40.  An evidentiary hearing on the charges was held on March 14, 2014.  Ex. F at 1.

On this occasion as well, the Judicial Panel trial officer's decision was partially favorable and partially adverse to Adams.  Adams was found not guilty of five charges, but found guilty of violating Article X, section 2F of the International Constitution, which prohibits the "refusal or deliberate failure to carry out legally authorized decisions of the International Convention, the International President, the International Executive Board, the Judicial Panel, or of the convention or Executive Board of a subordinate Body of which the accused is part."[9]  *See generally id.* at 6-9. Specifically, Adams was found guilty of failing to comply with the Judicial Panel decision in Case No. 12-156, ordering her to repay the $5,000 to Local 2250.  Adams was also found guilty of failing to abide by a formal written request from the Local 2250 Executive Board that she comply with the Judicial Panel decision by December 5, 2013.  *Id.* at 9.

At the trial held on these charges, Adams did *not* deny the fact that she had flouted a Judicial Panel order mandating that she pay the $5,000 to Local 2250.  Instead, Adams argued to the trial officer "that she did not owe the local $5,000 because the judge in the civil case ruled that she acted within her authority to hire the attorney."  *Id.* at 4.  The Judicial Panel trial officer rejected this proffered excuse for flouting his prior order, stating that "[t]here is no evidence that the civil court ruled Sister Adams was not responsible for payment of the $5,000," *id.* at 9, and adding that a

---

[8] The Judicial Panel decision in Case No. 14-02 is Exhibit F to the Kekacs Decl.  *See supra* note 2.

[9] The Judicial Panel also concluded that Adams had violated sections 2H and 2J of Article X of the International Constitution.  Ex. F at 9-10.

"refus[al] to abide by a lawful decision of the Judicial Panel . . . is something that cannot and will not be tolerated," *id.* at 10-11.

As a penalty for her misconduct, the Judicial Panel ordered Adams to make restitution to Local 2250 in the amount of $5,000; removed Adams from her position as President of Local 2250; and suspended Adams from the right to hold or seek elected union office for four years. *Id*. at 11. Adams appealed the decision in Case No. 14-02 to the full Judicial Panel. Am. Compl. ¶ 43. On August 7, 2014, the full Judicial Panel sustained the decision of the trial officer by a unanimous, 7-0 vote.[10] Ex. G.

### C. Procedural History

On October 27, 2014, Plaintiffs filed this lawsuit in the Circuit Court for Prince George's County, asserting, *inter alia*, claims against AFSCME for breach of the AFSCME Constitution and unjust enrichment, and seeking a restraining order to enjoin the then-ongoing election for President of Local 2250. Compl. (Doc. 2). AFSCME was not served with the Complaint until December 22, 2014. Notice of Removal (Doc. 1). AFSCME removed the case to federal court on December 29, 2014, on the ground that Plaintiffs' claim against AFSCME for breach of the AFSCME Constitution arose under § 301 of the LMRA, 29 U.S.C. § 185. *Id.* The Individual Defendants consented to removal on January 7, 2015. Resp. to Notice of Removal (Doc. 10).

On February 12, 2015, after AFSCME and the Local 2250 Defendants filed letter briefs setting forth the basis for their respective planned motions to dismiss, this Court held a pre-motion conference with counsel for all parties. During the conference, the Court explained that it would

---

[10] The decision on Adams' appeal to the full Judicial Panel in Case No. 14-02 is Exhibit G to the Kekacs Decl. *See supra* note 2.

give Plaintiffs a final opportunity to amend their Complaint in response to Defendants' respective arguments for dismissal.

Plaintiffs filed the operative Amended Complaint on March 2, 2015.  In the Amended Complaint, Plaintiffs assert the same three counts (including Count I for breach of contract) as in the original Complaint, with only relatively minor changes, and also bring *seven* additional counts: a second, seemingly-duplicative claim for "Breach of the AFSCME and Local 2250 Constitutions"; two claims for breach of the duty of fair representation; two claims for violations of the equal rights, free speech, and due process provisions of the Labor-Management Reporting & Disclosure Act ("LMRDA"); a claim for breach of fiduciary duties under the LMRDA and the common law, and a claim for abuse of process.  Given that Plaintiffs have had an opportunity to amend their complaint, AFSCME now moves to dismiss the claims against it, in their entirety and with prejudice, for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) and this Court's February 12, 2015 Order (Doc. 29).

## ARGUMENT

Each of the ten counts of Plaintiffs' Amended Complaint asserts a claim of misconduct "Against All Defendants."  Upon further examination of the specific allegations of the Amended Complaint, however, it is evident that AFSCME is not a proper party to many of the counts.  As to the other counts against AFSCME, although Plaintiffs have attempted to invoke any number of statutory provisions, each count seeks to challenge the same underlying conduct by AFSCME; namely, the issuance of two Judicial Panel decisions finding that lead Plaintiff Shirley Adams violated the AFSCME and Local 2250 Constitutions and sanctioning Adams for refusing to comply with the first decision.  Although Plaintiffs repeatedly try to cast their allegations of unfairness in

the Judicial Panel proceedings as violations of the procedural rules governing such disciplinary hearings, they have failed to allege any such violations.  All of their claims ultimately boil down to a disagreement with the Judicial Panel's interpretation and application of the AFSCME and Local 2250 Constitutions and the Judicial Panel's substantive decisions on the merits of the charges against Adams.  Federal courts have long avoided interference in internal union controversies and afforded substantial deference to a union's interpretation and application of its own governing constitutional documents, absent a violation of specifically-enumerated statutory or contractual prohibitions.  As Plaintiffs have twice failed to allege any facts showing any such violations here, this Court should dismiss all claims asserted against AFSCME in the Amended Complaint, with prejudice.

## I.  Standard of Review

A complaint is due to be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief can be granted.  *Gregan v. United States*, No. 13-cv-2925, 2014 WL 4751093, at *1 (D. Md. Sept. 22, 2014).  In deciding a Rule 12(b)(6) motion to dismiss, the Court must take the well-pled factual allegations in the complaint as true, but those factual allegations "must be enough to raise a right to relief above a speculative level."  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Put another way, to survive a Rule 12(b)(6) motion, the complaint "must state 'a plausible claim for relief,' as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 502 (D. Md. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (quoting *Iqbal*, 556 U.S. at 678), *aff'd*, 528 F. App'x 297 (4th Cir. 2013).  Moreover, the Court need not accept as true legal conclusions that are "couched" as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

> **II. Plaintiffs' Seemingly-Duplicative Claims for Breach of Contract (Count I) and Breach of the Local 2250 and AFSCME Constitutions (Count IV) Are Legally Deficient and Due To Be Dismissed Because Plaintiffs Have Failed Plausibly to Allege That AFSCME Breached Any Contractual Provisions**

Plaintiffs assert two, seemingly-duplicative counts against AFSCME (Counts I and IV) that are grounded in section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which provides federal subject matter jurisdiction over suits for violation of "contracts . . . between . . . labor organizations." *Prevas v. Hopkins*, 905 F. Supp. 271, 274 (D. Md. 1995).  The AFSCME Constitution, a contract between AFSCME and each of its affiliated local unions, is such a contract.  *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 99-100 (1991); *Plumbers & Pipefitters v. Plumbers & Pipefitters, Local 334*, 452 U.S. 615, 624-27 (1981).  Both counts arise out of the Judicial Panel decisions that imposed discipline on Adams for entering a retainer agreement without the knowledge and authorization of Local 2250's Executive Board and then failing to comply with the Panel's prior decision ordering her to reimburse the Local.  *See* Am. Compl. ¶¶ 69 (Count I) (alleging failure "to exercise fundamental fairness in the hearing process"); 91 (Count IV) (referencing Judicial Panel rulings).

Plaintiffs' original Complaint failed to cite a single constitutional provision allegedly breached by AFSCME.  In an attempt to prop up their claims, Plaintiffs have in their Amended

Complaint added references to a number of generic constitutional provisions in their new Count IV, which is titled "Violation of ACE/AFSCME International Constitution and Bylaws."  Yet Plaintiffs still fail to allege any facts to explain how these various provisions are relevant to this case or to suggest that AFSCME breached any of these provisions.  *See, e.g.,* Am. Compl. ¶ 92 ("Art. II, § 2 of AFSCME International Constitution and Bylaws sets forth the legitimate purposes and objects of AFSCME International, "*to promote the welfare of the membership and to provide a voice in the determination of the terms and conditions of employment.*") (emphasis in original).[11]

Plaintiffs also refer to § 8 of the AFSCME Bill of Rights for Union Members, which provides, "Accused members or officers shall have the right to a fair trial with strict adherence to due process."  *Id.* ¶ 94.[12]  However, Plaintiffs fail to allege *any facts* to support their conclusory allegation that Adams was denied a fair trial or any other due process protection afforded her by the terms of the AFSCME Constitution.

Tellingly in this regard, the AFSCME Constitution contains numerous other provisions, not cited or invoked by Plaintiffs, that spell out the various due process protections afforded union members accused of misconduct, *none of which* Plaintiffs claim were violated by AFSCME in

---

[11] Plaintiffs also cite the following generic provisions of "AFSCME International's Bill of Rights for Union Members," which appears on pages 8-9 of the AFSCME Constitution: § 2 ("Members shall suffer no impairment of freedom of speech"); § 5 ("Members shall have an equal right to run for and hold office").  Am. Compl. ¶¶ 93, 94.  And Plaintiffs assert that "Art. XI, § 2 of the Local 2250 Constitution and Bylaws sets forth the legitimate purposes and objects of ACE-FASCME [sic], Local 2250. Included among those legitimate objects and purposes are so as to allow the attainment of economic advantages, better wages and hours and working conditions and other benefits for working people."  Am. Compl. ¶ 95. Again, Plaintiffs have failed to allege how the conduct of the Judicial Panel hearings violated any of these provisions.

[12] Plaintiffs cite this provision as Article II, section 8.  Am. Compl. ¶ 94.  However, there is no Article II in the AFSCME Bill of Rights for Union Members, and no section 8 in Article II of the AFSCME Constitution, so it appears that Plaintiffs are referring to § 8 of the Bill of Rights for Union Members.

either of the two Judicial Panel trial proceedings at issue.  Plaintiffs' failure to assert such a claim is

unsurprising, because it is apparent on the face of the Judicial Panel decisions themselves that

Adams *was* afforded these various due process protections.  For example, Adams was given notice

of written charges submitted by the charging party.  Ex. A at Art. X, §§ 6, 10; Ex. D at 1; Ex. F at 1.

Adams also had the opportunity to testify and introduce evidence on her own behalf at both

hearings.  Ex. A at Art. X, § 12; Ex. D at 3-4; Ex. F at 4-5.

Indeed, rather than offering specific examples of conduct by AFSCME that allegedly

"breached" the due process provisions of the AFSCME Constitution, Plaintiffs baldly allege that

"ACE's [sic] Judicial Panel lacked constitutional authority to issue either of the rulings . . . against

union president Adams and exceeded constitutional constraints under the Constitution and By-laws

of ACE and AFSCME by conducting the evidentiary hearings culminating in those rulings." Am.

Compl. ¶ 91.  But without any supporting facts, this "legal conclusion couched as a factual

allegation" gets Plaintiffs nowhere.  *Twombly*, 550 U.S. at 555 (quoting *Papasan*, 478 U.S. at 286).

In sum, Count IV fails to allege facts plausibly showing that AFSCME breached *any*

provision of its Constitution in *any* way in connection with the two Judicial Panel decisions at issue.

The breach of contract claims asserted by Plaintiffs against AFSCME in Count IV should therefore

be dismissed.

Despite adding Count IV for breach of the AFSCME and Local 2250 Constitutions,

Plaintiffs have retained Count I of their original Complaint ("Breach of Contract") as Count I of the

Amended Complaint.  As in the original Complaint, Count I does not allege that AFSCME breached

any specific contractual or constitutional provisions.  Instead, Count I continues to rest on the vague

and rather confusing legal theory that—as best we can understand that theory—the AFSCME

Constitution should be read to contain an "implied warranty" as to the "reasonableness" or correctness of AFSCME Judicial Panel decisions; an "implied warranty" that purportedly was breached by AFSCME here. (Again, although Plaintiffs' Amended Complaint is not a model of clarity, this understanding of Plaintiffs' "implied warranty" legal theory is buttressed by ¶ 33 of the Amended Complaint, in which Plaintiffs allege that "AFSCME International . . . yielded the erroneous finding that Adams had violated two separate provisions of Article XI, section 2 of the Constitution.")

Our research has found no case reading an "implied warranty" of this nature into a union constitution, and that is unsurprising. There is a strong federal policy against judicial interference in internal union controversies absent a specifically-enumerated statutory or contractual prohibition on the internal union conduct at issue. *See e.g. Calhoon v. Harvey*, 379 U.S. 134, 140 (1964); *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 471 (1968). Moreover, in keeping with that policy, courts owe substantial deference to a union's interpretation and application of its own governing constitutional documents. *See Local 333,* 2001 WL 34767972, at *3; *Newell v. Int'l Bhd. of Elec. Workers*, 789 F.2d 1186, 1189 (5th Cir. 1986); *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971). To adopt Plaintiffs' novel legal theory that an international union constitution is properly read to contain an "implied warranty" as to the "reasonableness" or correctness of disciplinary decisions issued by an adjudicatory body established by that constitution would render every such disciplinary decision subject to challenge on its merits in federal court. Such a result would be squarely at odds with the strong federal policy against judicial interference in internal union controversies. Such a result would also threaten to flood the federal courts with litigation challenging union disciplinary decisions on their merits.

Although for these sound reasons this Court should categorically reject Plaintiffs' "implied warranty" theory and decline to entertain Plaintiffs' challenge to the merits of the Judicial Panel decisions at issue, we would be remiss if we failed to note that Plaintiffs' merits challenge to those decisions fails on its own terms in any event. The thrust of Plaintiffs' merits challenge is that the Judicial Panel's determination that Adams did not have *actual* authority under the Local 2250 Constitution to sign a $5,000 retainer agreement with Attorney Hardnett without the knowledge and authorization of the Local 2250 Executive Board is undermined and shown to be incorrect by the subsequent ruling of the Montgomery County District Court that Local 2250 was obligated to pay the $5,000 retainer fee to Attorney Hardnett. *See* Am. Compl. ¶¶ 36, 37, 96(b). But this merits challenge is baseless, inasmuch as the court's subsequent ruling along these lines rests squarely on the reasoning that Adams had *apparent* authority—as distinct from *actual* authority—to bind Local 2250 to the $5,000 retainer agreement with Attorney Hardnett. *See* Ex. E at 4:9-13 ("The issue before the court is whether or not Ms. Hardnett entered into a contract with someone who had *apparent* authority to bind the Defendant. And I'm satisfied that the evidence shows by a preponderance that [Adams] did.") (emphasis added). Indeed, although the court's decision does contain dicta that could be taken as critical of the Judicial Panel's determination that Adams lacked *actual* authority under the Local 2250 Constitution to bind the Local in these circumstances, the court quite properly declined to reach the merits of this *actual* authority issue, pointedly stating that "how that [Judicial Panel determination] plays out between the union administration and the union president is *not* the issue before the Court today." *Id.* at 4:7-9 (emphasis added).

In sum, the breach of contract claim against AFSCME in Count I of the Amended

Complaint fares no better than the breach of contract claim against AFSCME in Count IV of the

Amended Complaint, and is due to be dismissed as well.

### III. Plaintiffs Fail to Plead Facts Sufficient to Support Their Conclusory Allegations of LMRDA Violations (Counts V and VI)

Although Plaintiffs' original Complaint asserted no claims against AFSCME under the

LMRDA, Plaintiffs now claim in their Amended Complaint that AFSCME's "improper

sanctioning" of Adams, Am. Compl. ¶ 101, violated their LMRDA rights of equal participation in

union affairs and free speech (Count V), as well as their LMRDA due process rights (Count VI).

Like Plaintiffs' breach of contract claims against AFSCME, these LMRDA claims against

AFSCME arise out of the AFSCME Judicial Panel disciplinary proceedings.

Although Plaintiffs allege that the discipline imposed by the Judicial Panel violated their

equal rights and free speech rights under sections 101(a)(1) and 101(a)(2) of the LMRDA, they

have failed to plead sufficient factual content to support these legal conclusions, as required by

*Iqbal* and *Twombly*.  The LMRDA expressly provides that the exercise of union members' rights

may be conditioned upon those members' compliance with "reasonable rules" established by the

union.  29 U.S.C. § 411(a)(1); 29 U.S.C. § 411(a)(2) (union may "adopt and enforce reasonable

rules as to the responsibility of every member toward the organization . . . and to his refraining from

conduct that would interfere with its performance of its legal or contractual obligations").  Such

"reasonable rules" plainly include, *inter alia*, the disciplinary provisions of the AFSCME

Constitution, which permit sanctions to be imposed against members who are found guilty of

misconduct such as violating the local or International Constitutions or flouting the duly-authorized

decisions of AFSCME bodies such as the AFSCME Judicial Panel.  *See* Ex. A at Art. X, §§ 2, 15.

Accordingly, although the discipline imposed on Adams by the Judicial Panel may have had an incidental impact on Adams' equal rights and free speech rights as a union member, that discipline is not subject to attack as a violation of those membership rights absent some showing that it was imposed in violation of the disciplinary provisions of the AFSCME Constitution.  And, as we have already shown in Part II, *supra*, Plaintiffs have *not* alleged *any facts* in support of such a showing.

Turning to Plaintiffs' due process claims, the LMRDA mandates certain procedural safeguards in the conduct of union disciplinary proceedings, but it does not confer upon the federal courts general "'supervisory powers' over union tribunals."  *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1240 (2d Cir. 1979).  Specifically, § 101(a)(5) of the LMRDA prohibits a union from imposing discipline on a member, other than for nonpayment of dues, unless the member has been: "(A) served with written charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing."  29 U.S.C. § 411(a)(5).

Here, Plaintiffs do *not* claim that AFSCME violated LMRDA § 101(a)(5)(A) or (B) by failing to serve Adams with written charges or denying her a reasonable time to prepare a defense to those charges.  Rather, Plaintiffs' *only* claim under LMRDA § 101(a)(5) is that AFSCME failed to afford Adams "a full and fair hearing" in violation of § 101(a)(5)(C).  The fatal problem for Plaintiffs in this respect is that Plaintiffs' Amended Complaint does not come close to making out a plausible claim of a § 101(a)(5)(C) violation under the well-settled legal standards applicable to such claims.

In *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233 (1971), the Supreme Court squarely held that the "proper standard of judicial review" of union disciplinary decisions under LMRDA § 101(a)(5)(C) is whether the discipline imposed is supported by "*some*

evidence" adduced in the union disciplinary proceeding, inasmuch as "conviction on charges unsupported by *any* evidence is a denial of due process."  *See id.* at 245-46 (emphasis added).  At the same time, the Supreme Court cautioned that a "stricter standard" of judicial review under which a court would be at liberty to delve more deeply than this into the merits of the challenged union disciplinary decision "would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record."  *Id.* at 246.  *See also e.g. Eisman v. Balt. Reg'l Joint Bd. of Amalgamated Clothing Workers,* 352 F. Supp. 429, 432 n.1 (D. Md. 1972) ("With respect to the issue of whether a labor union has wrongfully imposed discipline upon a member . . . the scope of judicial review of union disciplinary action is limited to a mere examination of the record of the union proceeding to determine whether 'some' evidence was presented at the union disciplinary hearing to support the charges made."), *aff'd,* 496 F.2d 1313 (4th Cir. 1974); *Rowan v. Laborers Int'l Union*, No. 10-cv-3855, 2012 WL 3203046, at **8-9 (E.D.N.Y. Aug. 3, 2012) (granting a Rule 12(b)(6) motion to dismiss an LMRDA § 101(a)(5)(C) claim in circumstances indistinguishable from those presented here).

Plaintiffs' LMRDA § 101(a)(5)(C) claim fails utterly under this "proper standard of judicial review."  As set out *supra* at pp. 6-8, the first Judicial Panel decision assailed by Plaintiffs rests on *undisputed evidence* that Adams signed a $5,000 retainer agreement with Attorney Hardnett without the knowledge and authorization of the Local 2250 Executive Board, and the second Judicial Panel decision assailed by Plaintiffs rests on *undisputed evidence* that Adams refused to comply with the Judicial Panel's first decision.  That being so, Plaintiffs could not and do not attack either of those Judicial Panel decisions on the ground that they were unsupported by "*some* evidence" that Adams

19

engaged in the misconduct that she was found guilty of.  Rather, as discussed previously in connection with Plaintiffs' breach of contract claims against AFSCME, *see supra* p. 16, Plaintiffs' attack on those Judicial Panel decisions rests squarely on the contention that the AFSCME Judicial Panel erred in its interpretation of the scope of Adams' actual authority under Article XI, section 2 of the Local 2250 Constitution.  That is not a denial-of-due-process attack on those Judicial Panel decisions of the kind that might conceivably lie under the Supreme Court's controlling decision in *Hardeman*.  Rather, it is a merits attack of the kind that plainly does not lie under *Hardeman* and the principle recognized therein and in other cases that unions should be given wide latitude to govern their own internal affairs and interpret their own constitutional documents.

### IV. AFSCME Does Not Owe a Duty of Fair Representation (Counts II and III) to Plaintiffs Because It Is Not Their Exclusive Bargaining Representative

The gravamen of both Counts II and III is that all Defendants breached their duty of fair representation to the Plaintiffs by failing to process Plaintiffs' grievances against their employer. *See* Am. Compl. ¶¶ 72, 74 (Count II), 83 (Count III).  Under federal labor law, a union's duty of fair representation to all bargaining unit members flows from its status as the exclusive bargaining representative for those workers.  *See Vaca v. Sipes*, 386 U.S. 171, 177 (1986) (holding that the duty of fair representation is implicit in § 9 of the National Labor Relations Act, 29 U.S.C. § 159). Because the exclusive bargaining representative has statutory authority to represent all employees, it has a concomitant obligation to represent all of the employees fairly, "both in its collective bargaining with [the employer], . . . and in its enforcement of the resulting collective bargaining agreement," which includes processing employee grievances.  *Id.*

As the Amended Complaint makes clear, however, Local 2250 – not AFSCME – is Plaintiffs' exclusive bargaining representative.  *See e.g.* Am. Compl. ¶ 6 ("The Board of Education

of Prince George's County . . . recognizes the American Federation of State, County and Municipal Employees, Local 2250, hereinafter referred to as 'Local 2250,' as sole and exclusive bargaining agent for the employees."); *id.* ¶ 48 ("During all times material hereto, ACE, Local 2250 was the exclusive collective bargaining agent for its members . . . .").   Because Local 2250 is, by Plaintiffs' own lights, the exclusive bargaining agent for its members, the controlling case law is crystal clear that AFSCME owes no duty of fair representation to the Plaintiff members of Local 2250, in the processing of grievances or otherwise.  *See Sine v. Local No. 992, Int'l Bhd. of Teamsters*, 730 F.2d 964, 966 (4th Cir. 1984) (dismissing duty of fair representation claim against intermediate union body because "[w]here, as here, the local is designated as the exclusive bargaining agent . . . only the local can be held responsible."); *Tate v. Preston Trucking Co., Inc.*, 952 F.2d 397 (4th Cir. 1992) (unpublished opinion) (same).   Accordingly, the duty of fair representation claims asserted against AFSCME in Counts II and III are legally deficient and should be dismissed.

### V.  Section 501(a) of the LMRDA and Common Law Fiduciary Duties (Count VII) Apply Only to Individual Union Representatives, Not to Entities Such as AFSCME

Plaintiffs next assert that Defendants violated fiduciary duties owed to them under both § 501(a) of the LMRDA and common law.  Am. Compl. ¶ 127.  By its terms, § 501(a) applies only to "officers, agents, shop stewards, and other representatives of a labor organization," 29 U.S.C. § 501(a), and provides a right of action only against such individual union representatives.  *Id.* § 501(b).  AFSCME is a labor organization, not an individual representative of a labor organization, and therefore, Plaintiffs have failed to state a § 501 claim against AFSCME.  *See, e.g., Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) (holding that international union is not a proper party to a § 501(a) suit); *Stelling v. Int'l Bhd. of Elec. Workers Local 1547*, 587 F.2d 1379, 1385 n.6 (9th Cir. 1978) ("Section 501 does not provide for suit against a labor organization").  Moreover,

although Count VII alludes vaguely to "common law" fiduciary duties owed by labor organizations to their members, our research discloses no Maryland laws or decisions imposing any such "common law" fiduciary duties on AFSCME in the disciplinary context presented here.  Therefore, the fiduciary breach claims asserted against AFSCME in Count VII are legally deficient and should be dismissed.

### VI. Plaintiffs Fail to Allege that AFSCME Was "Unjustly Enriched" (Count VIII)

In Count VIII, Plaintiffs assert that "Defendants were unjustly enriched when Plaintiffs rendered their membership dues to Local 2250 and affiliation fees to AFSCME International."  Am. Compl. ¶ 152.  According to Plaintiffs, they paid their dues "with the expectation that AFSCME International and ACE, Local 2250 as agents and fiduciaries would represent [their] interests to employers as a benefit of membership," and because Defendants "ceased to represent or negotiate for Plaintiffs' interests," retention of Defendants' dues payments would be "unjust."  *Id.* ¶ 153.

As a threshold matter, this Count rests on the false premise that Plaintiffs paid money directly to AFSCME.  Under the AFSCME Constitution, local union members pay dues to their local union, which in turn pays a per capita tax to AFSCME for services and organizational support made available to the local by AFSCME.  *See* Ex. A at Art. IX, § 10 ("Per capita tax shall be paid on the number of individual monthly dues payments received by the local during the month . . . .").  Because Plaintiffs' dues were paid to Local 2250, not AFSCME, Plaintiffs have failed to allege that AFSCME was "unjustly enriched" by them.

Beyond that, and at a more fundamental level, Count VIII merely restates Plaintiffs' duty of fair representation claims, which, as we previously showed in Part IV, *supra*, are defective against AFSCME.  Plaintiffs do not dispute that Local 2250 had the right under its constitution to collect

dues from its members to support its collective bargaining and representational activities, nor do

they dispute that AFSCME was constitutionally permitted to collect a per capita tax from Local

2250 to support its organizational mission.  *See* Ex. C at Art. IV; Ex. A at Art. IX, § 10.  Rather,

Plaintiffs' theory is that the dues payments were not merited because Defendants "ceased to

represent or negotiate for Plaintiffs' interests."  Am. Compl. ¶ 153.  This is nothing more than a

repackaging of the claim that AFSCME breached a duty under federal labor law to fairly represent

Plaintiffs' interests, which, as we have shown, is an untenable claim against AFSCME.  *See supra*

pp. 20-21.  For this reason as well, Plaintiffs' "unjust enrichment" claim against AFSCME is legally

defective and should be dismissed.

### VII. Plaintiffs' Abuse of Process Claim (Count X) Fails Because Plaintiffs Do Not Allege that AFSCME Used Legal Process Against Plaintiffs

To establish abuse of process under Maryland law, Plaintiffs must allege "first, that the

defendant wilfully used process after it has issued in a manner not contemplated by law . . . ;

second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from

the defendant's perverted use of process."  *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md.

29, 38, 694 A.2d 952, 956 (Md. 1997) (citing *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 411, 494

A. 2d 200, 207 (Md. 1985) and *Berman v. Karvounis*, 308 Md. 259, 262, 518 A.2d 726, 729 (Md.

1987)).  To establish the damages element, Plaintiffs must plead that "an arrest of the person or a

seizure of the property of the plaintiff[s] resulted from the abuse of process."  *See id.* at 960

(affirming dismissal of abuse of process claim for failure to allege legally cognizable damages).

Plaintiffs purport to assert Count X, "Abuse of Process," against all Defendants.  The

allegations of Count X, however, refer only to Local 2250:  "By triggering the legal proceeding

described above, and by reporting [to] AFSCME International that Plaintiff Adams contracted

illegally on behalf of the union, ACE, Local 2250 engaged in abuse of the legal process . . . ."  Am.

Compl. ¶ 166.  The only legal proceeding described in the Amended Complaint is the state court

breach of contract action filed by Attorney Hardnett against Local 2250, to which AFSCME was

not a party.  *See id.* ¶ 36.  Because Plaintiffs fail to allege that AFSCME used any legal process

against them at all, much less that AFSCME's use of process resulted in their arrest or the seizure of

their property, this Court should dismiss the abuse of process claim asserted against AFSCME in

Count X.

### VIII. Plaintiffs' Count IX (Restraining Order) Is Not an Independent Cause of Action and Should Be Dismissed On That Ground

Finally, Plaintiffs purport to assert a cause of action (Count IX) for "a restraining order

suspending the result of the election, the suspension and expulsion of Shirley Adams while the civil

action is pending."  Am. Compl. ¶ 163.  A restraining order is a remedy, not an independent cause

of action.  *See, e.g., Thompson v. JPMorgan Chase Bank, N.A.,* 563 F. App'x 440, 442 n.1 (6th Cir.

Apr. 22, 2014), *cert. denied*, 135 S. Ct. 494 (2014); *Hames v. City of Miami*, 479 F. Supp. 2d 1276,

1280 n.3 (S.D. Fla. 2007), *aff'd*, 281 F. App'x 853 (11th Cir. 2008).  Accordingly, Count IX is

legally defective and should be dismissed as well.

Moreover, because, as we have shown, each of Plaintiffs' other claims against AFSCME

fails as a matter of law, there is no basis for the Court to issue a restraining order against AFSCME

in any event.[13]

---

[13] Even if any other claim were to survive AFSCME's motion to dismiss, Plaintiffs have failed to establish their entitlement to the "extraordinary remedy" of a preliminary injunction or temporary restraining order.  *See The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).  Among other things, Plaintiffs have not made a "clear showing that [they] will likely succeed on the merits" of any of their claims against AFSCME at trial.  *Id.* at

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims against AFSCME are legally defective and should be dismissed with prejudice.

Respectfully submitted,

/s/ *Caitlin Kekacs*
Caitlin Kekacs*
Andrew Roth*
Matthew Clash-Drexler (Bar # 18825)
BREDHOFF & KAISER PLLC
805 Fifteenth St., N.W.
Washington, D.C.  20005
Tel: (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
ckekacs@bredhoff.com
mcdrexler@bredhoff.com

* Admitted pro hac vice

*Counsel for Defendant AFSCME*

---

346 (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20-23 (2008)).  Indeed, Plaintiffs have not provided any evidence or affidavits whatsoever to support their claimed entitlement to preliminary injunctive relief.  They rely solely on the unverified allegations of their Amended Complaint.