**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

**SHIRLEY ADAMS,** *et al.*,

        **Plaintiffs,**

**v.**

**THE AMERICAN FEDERATION OF**
    **STATE, COUNTY AND MUNICIPAL**
    **EMPLOYEES INTERNATIONAL, a/k/a**
    **AFSCME INTERNATIONAL,** *et al.*

        **Defendants.**

    Case No.:  **PWG-14-4023**

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

This labor dispute involves local union members; the national organization American Federation of State, County and Municipal Employees International ("AFSCME" or "AFSCME International"); the Association of Classified Employees of the Prince George's County School System ("Local 2250" or "ACE"), and Local 2250's Executive Board members ("Executive Board"). Local 2250 is AFSCME's local affiliate, pursuant to an agreement between the local and national unions ("ACE-AFSCME Agreement"). Plaintiff Shirley Adams was elected president of Local 2250 in 2010, at which point the events giving rise to this litigation began. Briefly, Plaintiffs allege that Defendants, through various breaches of contracts and their duties of fair representation, improperly charged her with misconduct and ultimately removed her from office, while failing to address union members' grievances. Defendants have moved to dismiss. ECF Nos. 33, 34. Because this Court lacks jurisdiction over the statutory claims against Local 2250 and members of its Executive Board (together, "Local 2250 Defendants"), I will dismiss those claims. And, because Plaintiffs fail to state a claim against AFSCME, I will dismiss those

claims as well. Further, I will decline to exercise supplemental jurisdiction over the common law claims against Defendants.

### **Factual and Procedural History**

Although the 172-paragraph Amended Complaint is far from a model of clarity, it appears that the crux of this dispute is that Plaintiffs Adams, Terry Allen, and Todd Kingman,[1] members of Local 2250, believe that Defendants Local 2250, AFSCME, and Local 2250 Executive Board members Shirley Kirkland, Wanda Newman, William Gray, Yvonne Wilson, James Owen, William Lutholtz, and Lyneshia Woodland engaged in ongoing conduct in breach of the ACE-AFSCME Agreement, the local and national unions' constitutions and bylaws, and their duty of fair representation in an effort to terminate Adams's presidency prematurely.  The core factual allegations involve two Local 2250 Executive Board decisions and two administrative hearings before AFSCME's Judicial Panel ("Panel"),[2] triggered by Adams's entering into a $5,000 retainer fee agreement on behalf of Local 2250, for its defense in a lawsuit that a staff member brought against Local 2250.  Mar. 21, 2013 Panel Dec. & Apr. 29, 2014 Panel Dec., AFSCME's Mem. Exs. D, F, ECF Nos. 34-6, 34-8; *see* AFSCME's Mem. Ex. G,

---

[1] Adams, Allen, and Kingman are the only Plaintiffs named in the Amended Complaint.  Am. Compl. 2, ECF No. 32.  Antoinette Murphy and Debbie Coghill, named in the original complaint, are stricken in the redlined version of the Amended Complaint, which also lists "Limes."  Redlined Am. Compl. 1, ECF No. 32-1.  The Amended Complaint states that it "is brought by four union members."  Am. Compl. 2.  It is unclear who the fourth plaintiff is.

[2] Plaintiffs refer to the Panel as "ACE's Judicial Panel," e.g., Am. Compl. § 91, but it appears that the Panel is a part of the national, not the local, organization.  *See* Local 2250's Constitution art. III, § 2, AFSCME's Mem. Ex. C, ECF No. 34-5 ("Any expelled member of the Union shall have the right to appeal the decision of the Executive Board to the *Judicial Panel of the International Union*." (emphasis added)); AFSCME Const. art. IX, § 38 & art. XI, § 12, AFSCME's Mem. Ex. A, ECF No. 34-3 (providing for a "Judicial Panel" to hear and investigate matters such as alleged misconduct by officers of local unions and to issue decisions that include summaries of evidence, findings of fact, conclusions of law, and assessments of penalties).

ECF No. 34-9 (affirming April 29, 2014 Panel Dec.).[3]  Adams insists that she had the authority to enter into the retainer agreement and that the Executive Board's decisions and administrative charges were simply part of the Executive Board's campaign to tarnish her name.

Specifically, the Executive Board brought before the Panel charges that Adams, *inter alia*, exceeded her authority in agreeing to the retainer fee without prior approval. The Panel held a hearing on February 4, 2013, and in a March 21, 2013 decision, the Panel agreed with the Executive Board regarding the fee agreement, ordering Adams to pay the fee.  On September 25, 2013, the Local Executive Board directed Adams to comply with the Panel decision and pay the fee by December 5, 2013.  Apr. 29, 2014 Panel Dec. 8–9.  When Adams did not pay, the Local 2250 Executive Board held a Special Board meeting on December 16, 2013 and suspended Adams from office for entering into the retainer agreement; Adams "refuse[d] to abide by the Board's decision." *Id.*

Meanwhile, the retained attorney (Plaintiffs' counsel in this case) filed suit in Montgomery County District Court to recover her fee, and on May 22, 2013, the state court judge ordered Local 2250 to pay it based on Adams's "apparent authority" to enter into the

---

[3] For purposes of considering Defendants' motions to dismiss, I accept as true the well pleaded facts that Plaintiffs alleged in the Complaint. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  While generally the law is clear that a federal district court may not consider extrinsic evidence outside of the pleadings when ruling on a defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), when "'a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks omitted)).  Here, AFSCME attaches the administrative decisions, as well as the state court transcript, which form the basis for a number of Plaintiffs' allegations.  Plaintiffs do not challenge their authenticity.  Therefore, I have considered these documents, which helped clarify the underlying central issues.  *See id.*; *Am. Chiropractic*, 367 F.3d at 234.

retainer agreement.   State Ct. Tr. 5, AFSCME's Mem. Ex. E, ECF No. 34-7.   The judge acknowledged that how the Panel's March 21, 2013 finding that Adams lacked authority "plays out between the union administration and the union president [was] not the issue before the Court."  *Id.*   Nonetheless, in Plaintiffs' view, "[t]he outcome of the May 22d [state court] trial exposed the omissions and affirmative misrepresentations to AFSCME … by Kirkland and a seven-member faction of ACE's Executive Board."  Am. Compl. ¶ 37.   And, believing the state court judgment to mean that she no longer was obligated to reimburse the union, Adams refused to reimburse the Local 2250 for the retainer fee, which led to a second administrative hearing before the Panel on March 14, 2014.  In an April 29, 2014 decision, the Panel removed Adams from office for failure to comply with its previous decision, suspended her from running for another office for four years, and directed her to reimburse the Local 2250 for the retainer fee or be expelled from the union.

Plaintiffs also allege that Local 2250 misrepresented to AFSCME that Adams was responsible for the delay in renewing the Local 2250 Executive Director's term, when in their opinion the Executive Director's renewal resulted from "improper voting procedures" that Adams properly challenged and Local 2250 prevented Adams from correcting. Am. Compl. ¶¶ 20-27.  And, unrelated to the purported efforts to oust Adams, Plaintiffs claim that Local 2250 and AFSCME "[f]ail[ed] to administer over eighty (80) pending Member grievances on their merits." *Id.* ¶ 96.

Adams, Kingman, Antoinette Murphy, Debbie Coghill, "and Limes et al." filed a complaint in the Circuit Court for Prince George's County for breach of contract, unjust enrichment, and injunctive relief against the Executive Board Defendants and AFSCME "for imposing sanctions on the member elected President [Adams] of Local 2250."  Compl., ECF No.

2.  They claimed that Defendants' imposition of sanctions breached their local constitution and deprived them "of the right to vote for the candidate of their choice, the right to hold office." They also claimed that Defendants "fail[ed] to improve working conditions and to promote the welfare of the membership." *Id.* at 1.  They sought Adams's reinstatement as president and asked for the current election to be enjoined until she is placed on the ballot.

AFSCME removed to this Court, ECF No. 1, and then sought leave to file a motion to dismiss for failure to state a claim, noting that, with regard to Plaintiffs' unjust enrichment claim, it appeared to be a claim against Local 2250, and not AFSCME, despite Local 2250's absence as a defendant on the original complaint.  ECF No. 22.  The Executive Board 2250 Defendants also sought leave to file a motion to dismiss, claiming that the claims were not directed at them and in any event failed to state a claim.  ECF No. 23.  The parties agreed in a February 12, 2015 conference call that Plaintiffs would file an amended complaint to address the deficiencies that Defendants identified, after which Defendants could file their motions to dismiss, if they still had a basis for doing so, and any dismissal of the amended complaint would be with prejudice.  ECF No. 29.

Plaintiffs filed their Amended Complaint, adding Local 2250 as a defendant, completely rewriting the factual allegations and causes of action, of which there now are ten, each as to all Defendants.  ECF No. 32.  Count I alleges breach of contract, and Count IV alleges violations of the unions' constitutions and bylaws. Count II alleges a hybrid action, pursuant to § 301 of the Labor–Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, for the unions' breach of their duty of fair representation.   Count III also alleges a breach of the duty of fair representation, in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. Counts V, VI, and VII allege violations of the Labor–Management Reporting and Disclosure Act

("LMRDA"), 29 U.S.C. §§ 411(a)(1), (2) (5), 501(a), with Count VII also including a common law breach of fiduciary duty claim.  Counts VIII and X are Maryland common law claims of unjust enrichment and abuse of process. Count IX is entitled "Restraining Order."

The Executive Board Defendants, along with Local 2250 (together, "Local 2250 Defendants"), moved to dismiss for lack of jurisdiction, ECF No. 33, and AFSCME moved to dismiss for failure to state a claim, ECF No. 34.  The parties fully briefed the motions, ECF Nos. 33-1 (Local's Mem.), 34-1 (AFSCME's Mem.), 35 (Pls.' Opp'n to AFSCME), 38 (Pls.' Opp'n to Local), 39 (AFSCME's Reply), 40 (Local's Reply).  Additionally, Plaintiffs sought leave to file a surreply to the Local 2250 Defendants' motion "to present information not supplied to the Court by Defendants in their Reply."  Pls.' Mot. to File Surreply to Local's Mot. to Dismiss 1, ECF No. 50.  And, Plaintiffs sought leave to file a Surreply to AFSCME's motion "to respond to the new cases cited by Defendants in their Reply."  Pls.' Mot. to File Surreply to AFSCME's Mot. to Dismiss 1, ECF No. 44.  Defendants opposed Plaintiffs' motions to file surreplies.  ECF Nos. 45, 51.  A hearing is not necessary.  *See* Loc. R. 105.6.

## Motions for Leave to File Surreplies

Surreplies may not be filed without leave of court, *see* Loc. R. 105.2(a), but they "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (citing *Lewis v. Rumsfeld,* 154 F. Supp. 2d 56, 61 (D.D.C. 2001)).  Plaintiffs' proposed Surreply to the Local 2250 Defendants' motion lists "New Facts," including that Local 2250 "is a private sector employer," that "Charles Clark a paid (AFSD) employee of AFSCME International was sent to Ace – AFSCME Local 2250 to work[] as the Acting Executive Director for the Defendant ACE – AFSCME Local 2250, while

also working with and being paid by the AFSCME International," and that "Plaintiff believes that Mr. Clark was sent to ACE – AFSCME Local 2250 (Local 2250) to assist a certain faction on the Executive Board in their attempts to oust Shirley Adams and other members who demanded that their grievances were addressed properly and in a timely manner." Pls.' Proposed Surreply to Local's Mot. ¶¶ 2, 11–14. Plaintiffs' motion to file a surreply to the Local 2250 Defendants' motion is denied, as it does not respond to "matters presented to the court for the first time in the opposing party's reply," but rather presents factual allegations that Plaintiffs could have included in their Opposition, but did not. *See Khoury*, 268 F. Supp. 2d at 605. Indeed, Plaintiffs could have pleaded (but did not) these factual allegations in their Amended Complaint. Plaintiffs cannot use the briefing on a motion to dismiss to amend their complaint. *See Mathis v. McDonough*, No. ELH-13-2597, 2014 WL 3894133, at *25 (D. Md. Aug. 7, 2014) ("To the extent plaintiff seeks to amend his Complaint by adding new allegations by way of his Opposition, that effort must fail, as '"it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."'" (quoting *Mylan Labs., Inc. v. Akzo, N.V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991) (citation omitted))); *see also Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 n.8 (D. Md. 2009) (stating that court could not consider issue raised for the first time in reply memorandum).

Similarly, in their proposed surreply to AFSCME's motion, Plaintiffs assert—for the first time with regard to AFSCME's motion—that AFSCME had an "'insider' on the local's Board" and "assigned its paid employee Charles Clark to the local on a daily bases [sic] as acting Executive Director … to help get rid of Shirley Adams and the stronger members who supported her." Pls.' Proposed Surreply to AFSCME's Mot. 6–7. Thus, Plaintiffs' proposed surreply clearly does not simply address new cases that AFSCME cited, as Plaintiffs claim in their

motion.  Insofar as Plaintiffs seeks to make new factual allegations and present new arguments that are not in response to an argument AFSCME raised for the first time in its reply, I will deny their motion to file a surreply as to AFSCME's motion for the same reasons I denied their motion to file a surreply as to the Local 2250 Defendants' motion.  *See Khoury*, 268 F. Supp. 2d at 605; *Mathis*, 2014 WL 3894133, at *25; *Mylan Labs.*, 770 F. Supp. at 1068.

The "new cases" AFSCME cites in its Reply pertain to the limitations on Local 2250's liability as a union that only represents public employees and the limitations on AFSCME's liability for the Local 2250 Defendants' actions.  *See* AFSCME's Reply 6, 10.  Given that the issues regarding Local 2250 Defendants' liability are briefed with regard to their motion to dismiss and are relevant to AFSCME's liability, I will consider Defendants' new arguments and Plaintiffs' responses to those arguments.  Insofar as Plaintiffs' proposed surreply to AFSCME's motion addresses these arguments, it is accepted as filed for that limited purpose.  *See Khoury*, 268 F. Supp. 2d at 605.

## Standards of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This Rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),

and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as the Local 2250 Defendants do here, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013).  Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting *Kerns*, 585 F.3d at 192).  This Court must act "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).

## Jurisdiction

### LMRDA Claims against Local 2250 Defendants

A person "may bring suit against a 'labor organization' in federal district court" for a violation of the LMRDA. *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 201 (3d Cir. 1990) (quoting 29 U.S.C. § 412).

> A "labor organization[]" . . . is defined as an entity "which exists for the purpose, in whole or in part, of dealing with *employers*" concerning terms or conditions of employment. 29 U.S.C. § 402(i) (emphasis added). The term "employer" is defined to exclude "any State or political subdivision thereof," as well as the federal government and federal entities. 29 U.S.C. § 402(e). Thus, a "labor organization" must "exist[ ] for the purpose, in whole or in part, of dealing with" an employer other than federal, state, or municipal government.

*Id.*

The Local 2250 Defendants argue that this Court lacks jurisdiction over the LMRDA claims against them because "Local 2250 represents only state employees," and therefore "the provisions of the LMRDA do not apply."   Local's Mem. 6.   Plaintiffs counter that "[t]he Department of Labor and several courts have to date clarified that LMRDA does not cover unions that represent only government workers, but it does cover those that represent only private sector workers and also so-called 'mixed unions,' i.e., those that deal with both public and private employers . . . ."  Pls.' Opp'n to Local 4.[4]  In Plaintiffs' view, "Local 2250 is subject to the federal statute invoked by Plaintiff's complaint, via its affiliation with its controlling parent AFSCME . . . , which is a 'labor organization' for purposes of LMRA's section 301 as a 'mixed' (public and private) international union."  *Id.* at 5.

---

[4] As the pages of the Opposition are unnumbered, page numbers cited here refer to the ECF page number.  The Opposition also is unsigned.

It is true that the LMRDA applies to local unions that represent private employees and local unions that represent both public and private employees ("mixed unions"), as well as parent organizations if one or more of their locals is a mixed union or represents only private employees. *See Wildberger v. Am. Fed'n of Gov't Employees, AFL-CIO*, 86 F.3d 1188, 1192 (D.C. Cir. 1996) ("According to the Department of Labor's regulation interpreting the LMRDA, in the case of "organization[s] composed both of government locals and non-government or mixed locals, the parent organization as well as its mixed and non-government locals would be . . . subject to the Act." (citing 29 C.F.R. § 451.3(a)(4)); *Martinez v. Am. Fed. of Gov't Employees*, 980 F.2d 1039, 1042 (5th Cir. 1993) (concluding that a federal district court has subject matter jurisdiction over an LMRDA claim against a parent labor organization if the parent, "through any of its locals, deals with any private sector employers on behalf of its members concerning the terms and conditions of employment"); *see Meredith v. Louisiana Fed'n of Teachers*, 209 F.3d 398, 405 (5th Cir. 2000) ("If a union or any of its locals bargain with private sector employees, the union is governed by the LMRDA.") (citing *Martinez*, 980 F.2d at 1040). But, Plaintiffs have not identified any case law that addresses the converse situation presented in the case before me—whether a LMRDA claim against a *local* labor union representing only public employees falls under the federal courts' jurisdiction if its parent organization "deals with any private sector employers on behalf of its members." *See Martinez*, 980 F.2d at 1042.

The cases Plaintiffs cite generally are inapposite. It is true that, in *Chao v. Bremerton Metal Trades Council*, 294 F.3d 1114, 1118 (9th Cir. 2002), the Ninth Circuit based its conclusion that "the Bremerton Council is . . . a labor organization" on "its subordination to Metal Trades Department," which "is a labor organization." But, in doing so, it considered the

definition of "labor organization" in 29 U.S.C. § 402(j)(5), which pertains to "a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization." *Bremerton*, 294 F.3d at 1117.  That definition is inapplicable to Local 2250.  *See* 29 U.S.C. § 402(j)(5); *see also Alabama Educ. Ass'n v. Chao*, 539 F. Supp. 2d 378, 380 (D.D.C. 2008) (construing § 402(j)(5)).  *Wildberger*, 86 F.3d at 1191–92, easily is differentiated because the defendants were the national union and the national union president, not the local union.  In *London v. Polishook*, 189 F.3d 196, 199 (2d Cir. 1999), the Second Circuit remanded for further consideration of the jurisdictional issue because the plaintiff had "suppl[ied] several facts to support its argument" that the defendant was a mixed union, and the district court failed to consider them.  Here, Plaintiffs did not allege or offer any factual support with their Opposition that demonstrates that Local 2250 is a mixed union.[5]

Neither is *Kinslow v. Briscoe*, No. 92 C 4830, 1993 WL 72336, (N.D. Ill. Mar. 12, 1993), informative for my analysis.  There, the "parties impliedly assume[d] the LMRDA applie[d]" to the local union defendant, although it was "not clear from the pleadings that LMRDA applie[d]." *Id.* at *1 n.1.  The court, observing that "[t]he LMRDA does apply . . . to unions which represent both private and public sector employees, even if the member bringing suit is a public employee," but "[u]nions which only represent employees of political subdivisions are not bound by the provisions of the LMRDA," ordered the plaintiff "to brief this jurisdictional issue."  *Id.* And, in *Berardi*, the Third Circuit remanded because the record did "not adequately support the trial court's holding" that the local union was not a "labor organization" under the LMRDA, because "[t]heoretically, . . .the Lodge [could] represent[] associate or honorary members in dealing with private employers."  920 F.2d at 199, 201.

---

[5] Insofar as Plaintiffs seek to do so through a surreply, their filings come too late, as discussed earlier.

*Martinez*, however, provides helpful guidance.  There, the Fifth Circuit "pause[d] to note the limited nature of [its] decision" that a local's mixed status brings its parent organization within the purview of the LMRDA, stating:

> A federal employee can only bring suit in federal court under the LMRDA when *his dispute is with his union and the union happens to deal with private employers* concerning the terms and conditions of employment. This decision today merely ensures that all members of the same national union have the same rights vis-a-vis their national union.

980 F.2d at 1042 (emphasis added).  Stated differently, a person can only file an LMRDA action against a union that includes private employees.  *See id.*  And, the Third Circuit observed that the LMRDA's provisions "apply only to 'labor organizations' and thus do not affect public employee unions," even when the international parent organization qualifies as a "labor organization."  *N.J. Cty. & Mun. Council No. 61, Am. Fed'n of State, Cty. & Mun. Emp., AFL-CIO v. Am. Fed'n of State, Cty. & Mun. Emp., AFL-CIO*, 478 F.2d 1156, 1157–58 (3d Cir. 1973).  Also, while *Wildberger* was not on point, the D.C. Circuit did observe that "the Department's regulations provide that locals composed purely of government employees are not subject to the [LMRDA]," while noting that "the regulations are silent on whether the Act protects members of such locals from actions of the mixed union parent." 86 F.3d at 1192. Moreover, in *Wright v. Baltimore Teachers Union*, 369 F. Supp. 848 (D. Md. 1974), this Court held that it lacked jurisdiction over claims against a local union under the LMRDA, even though its parent union represented both private and public employees, because there was no evidence that the local union represented any private employees.

In sum, a local union that represents only public employees is not subject to the LMRDA, and the fact that its parent organization qualifies as a labor organization for purposes of the LMRDA does not change the local union's status.  *See Wright*, 369 F. Supp. 848; *Wildberger*, 86

F.3d at 1192; *Martinez*, 980 F.2d at 1042; *N.J. Cty. & Mun. Council No. 61*, 478 F.2d at 1157–

58.  Thus, given the record before me that Local 2250 represents only public employees, it is not

subject to the LMRDA, and this Court lacks subject matter jurisdiction over the LMRDA claims

against it.  *See Wright*, 369 F. Supp. 848; *Wildberger*, 86 F.3d at 1192; *Martinez*, 980 F.2d at

1042; *N.J. Cty. & Mun. Council No. 61*, 478 F.2d at 1157–58.

### LMRA and NLRA Claims against Local 2250 Defendants

In Count I, Plaintiffs claim that AFSCME and Local 2250 "breached the contract entered

into with the Plaintiffs . . . ('labor contract')," as well as its implied warranty of good faith and

fair dealing, and "violated the terms of the ACE-AFSCME Agreement."  Am. Compl. ¶¶ 66–69.

In Count IV, Plaintiffs allege that "[t]he AFSCME International Constitution and Bylaws and

ACE [Local 2250] Constitution and Bylaws comprise contracts between AFSCME-ACE [Local

2250] and employees including but not limited to the Plaintiffs herein, within the meaning of

§ 301(a)," *id.* ¶ 90, and that "AFSCME International and Local 2250 have violated their own

Constitution and Bylaws, to the detriment of the Plaintiffs," *id.* ¶ 96.  In Count II, Plaintiffs claim

that "Defendants owed a duty of fair representation to all of their members, including Plaintiffs,"

*id.* ¶ 72, and that

> [b]y failing to protect its member's rights and disregarding employer breaches of
> contractual obligations to Plaintiff employees under the collective bargaining
> agreement in violation of Sec. 301 of the Labor Management Relations Act, 29
> U.S.C. Sec. 185, Defendant ACE [Local 2250] and Defendant AFSCME
> International have each failed to satisfy the duty of fair representation implied by
> the National Labor Relations Act, 29 U.S.C. Sec. 151 et seq.

*Id.* ¶ 74.  Plaintiffs also claim, in Count III, that AFSCME and Local 2250 "breached their Duty

of Fair Representation in violation of the NLRA," and their "conduct . . . constituted an unfair

labor practice under Section 8(b)(1)(A) of the NLRA" when they "fail[ed] to administer

Plaintiffs' grievances in good faith and in a timely manner based on Plaintiffs' political

affiliation with Plaintiff Adams and refus[ed] to adequately pursue meritorious claims filed by

. . . other Members of Local 2250 against their employers, based on arbitrary political

motivations and subjective hostility toward Adams." *Id.* ¶¶ 83, 87.  The Local 2250 Defendants

argue for dismissal of the NLRA and LMRA claims against them on the basis that, under either

law, Plaintiffs are not "employee[s]," Prince George's County Public Schools is not an

"employer," and Local 2250 is not a "labor organization," such that Plaintiffs cannot bring

claims under these statutes against Local 2250.  Local's Mem. 5.[6]

   Section 301 of the LMRA provides that federal district courts have jurisdiction over

"[s]uits for violation of contracts between an *employer* and a *labor organization* representing

*employees* in an industry affecting commerce as defined in this Act, or between any such *labor*

*organizations*."  29 U.S.C. § 185(a) (emphasis added).  And, the NLRA "impos[es] 'a "duty of

fair representation" on labor unions, which a union breaches "when its conduct toward a member

of the bargaining unit is arbitrary, discriminatory, or in bad faith."'" *Snead v. Bd. of Educ. of*

*Prince George's Cnty.*, 815 F. Supp. 2d 889, 896 (D. Md. 2011) (quoting *14 Penn Plaza, LLC v.*

*Pyett*, 556 U.S. 247, 271 (2009) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44,

(1998))).

   The NLRA defines "employer" as "any person acting as an agent of an employer, directly

or indirectly, but *shall not include . . . any State or political subdivision thereof . . .* or any labor

organization (other than when acting as an employer), or anyone acting in the capacity of officer

---

[6] I assume, for purposes of this analysis, that Plaintiffs bring statutory claims pursuant to § 301 of the LMRA in Counts I and IV, even though they label these counts as "Breach of Contract" and "Violation of ACE/AFSCME International Constitution and Bylaws," suggesting that they may be common law claims.  Both the Local 2250 Defendants and AFSCME characterize these claims as brought pursuant to § 301 of the LMRA.  Local's Mem. 3; AFSCME's Mem. 13.  This is not to say that Plaintiffs do not also bring common law claims.  *See* Am. Compl. ¶¶ 90, 98 (purporting to bring constitutional violation claims under state and federal law).  I address Plaintiffs' common law claims in the section "Common Law Claims," on page 33.

or agent of such labor organization."  29 U.S.C. § 152(2) (emphasis added).  It defines "labor organization" as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with *employers* concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."  29 U.S.C. § 152(5) (emphasis added).  The LMRA in turn provides that "[t][he terms . . . 'employer', 'employee', 'labor organization' . . . shall have the same meaning as when used in [the NLRA]."  29 U.S.C. § 142(3).  "It necessarily follows that employees of a school district are not 'employees' who can sue their unions under the NLRA for a breach of the duty of fair representation."  *Snead*, 815 F. Supp. 2d at 896 (quoting *Roberts v. E. Lyme Bd. of Educ.*, 173 F.3d 846, 1999 WL 220104, at *1 (2nd Cir. 1999) (Table); citing *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 360 (7th Cir. 1998) ("Since the School Board is not an 'employer' and Strasburger is not an 'employee,' [29 U.S.C. § 185(a)] provides no federal basis for his claim").  Thus, neither the NLRA nor the LMRA covers public employees, such as employees of a school district.  *See id.*; 29 U.S.C. §142(3), 152(2), (5).

Plaintiffs are employees of the Prince George's County School District, and Prince George's County is a subdivision of the State of Maryland.  Thus, Prince George's County School District is not an employer for purposes of either statute, and consequently, the Local 2250 is not a labor organization.  *See* 29 U.S.C. §§ 142(3), 152(2), (5).  Therefore, Plaintiffs cannot bring claims against Local 2250 under the LMRA or NLRA.  *See id.*; *Snead*, 815 F. Supp. 2d at 896 (discussing NLRA and concluding that "Plaintiff's claim for breach of the duty of fair representation cannot prevail under federal law"; citing *Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92, 102 n.9 (1972); *Teledyne Econ. Dev. v. N.L.R.B.*, 108 F.3d 56, 59 (4th Cir. 1997)).

This is not the end to my analysis of Counts I and IV, however, as a common law breach of contract claim may survive, if not preempted.  Section 301 preempts claims for "violation of a contract *between an employer and a labor organization* representing employees in an industry affecting commerce or for violation of a contract *between such labor organizations*," as well as violation of a union's constitution or bylaws.  *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98, 100 (1991) (emphasis added).  It also "is settled law that any claims that require the interpretation of a collective bargaining agreement . . . are completely pre-empted by § 301 of the LMRA." *Taylor v. Giant Food, Inc.*, 438 F. Supp. 2d 576, 581 (D. Md. 2006) (citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 559–60 (1968); *McCormick v. AT&T Techs., Inc.*, 934 F.2d 531, 534 (4th Cir. 1991)).  "Thus, regardless of how a plaintiff may label [such a] claim, it is construed as a claim brought pursuant to § 301 of the LMRA . . . ." *Id.*  But, given that Local 2250 does not qualify as a labor organization under 29 U.S.C. §§ 142(3), 152(2), (5), neither a claim for breach of *its* constitution or bylaws—as opposed to ASFCME's constitution or bylaws—nor a claim for breach of a contract between Local 2250 and an employer or between Local 2250 and AFSCME (e.g., the ACE-AFSCME Agreement) is preempted by § 301.  *See Wooddell*, 502 U.S. at 98, 100; *Taylor*, 438 F. Supp. 2d at 581.  Such claims against Local 2250 may be brought as breach of contract claims under common law.  *See Wooddell*, 502 U.S. at 98, 100; *Taylor*, 438 F. Supp. 2d at 581.  I address Plaintiffs' common law claims against all Defendants in the section "Common Law Claims," on page 33.

**Sufficiency of Claims**

**Count IV – AFSCME's[7] Violation of Unions' Constitutions and Bylaws**

Preliminarily, I note that Plaintiffs' claim that AFSCME, a labor organization, violated its own Constitution and Bylaws, is brought pursuant to the LMRA.  *See Wooddell*, 502 U.S. at 100. Nonetheless, the elements are the same as a common law claim for breach of contract.  *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 n.7 (1966) (noting that, where a "suit is essentially an action for damages caused by an alleged breach [of a labor contract]," it "closely resembles an action for breach of contract cognizable at common law").  Plaintiffs must allege a contractual obligation, a breach of that obligation, and damages.  *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015); *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011).

Plaintiffs identify five contractual provisions, one in Local 2250's Constitution and four in AFSCME's Constitution.  Each constitution has a provision that states "the legitimate purposes and objects" of the unions without imposing any obligations on the parties to the contract.  Am. Compl. ¶¶ 92, 95.  For Local 2250, the purposes are "to allow the attainment of economic advantages, better wages and hours and working conditions and other benefits for working people." *Id.* ¶ 95 (quoting Local Const. art. XI, § 2).  For AFSCME, they are "'to promote the welfare of the membership and to provide a voice in the determination of the terms and conditions of employment.'" *Id.* ¶ 92 (quoting AFSCME Const. art. II, § 2 (emphasis removed)).  Another provision of AFSCME's Constitution "states that 'Members shall suffer no

_____

[7] As noted, I address this Count insofar as it presents a common law claim against the Local 2250 Defendants in the section "Common Law Claims," on page 33.

impairment of freedom of speech concerning the operations of this union. Active discussion of union affairs shall be encouraged and protected within this organization.'" *Id.* ¶ 93 (quoting AFSCME Const., Bill of Rights § 2). A third provision of AFSCME's Constitution "sets forth that 'Members shall have an equal right to run for and hold office,'" *id.* ¶ 94 (quoting AFSCME Const., Bill of Rights § 5), and a fourth provides that "[a]ccused members or officers shall have the right to a fair trial with strict adherence to due process," *id.* ¶ 94 (quoting AFSCME Const., Bill of Rights § 8).

As for breach, Plaintiffs claim that Defendants "[v]iolat[ed] union obligations to meet union financial obligations to third parties," and in this regard acted "inconsistent[ly] with the proper expenditure of funds under the AFSCME and ACE Constitutions." Am. Compl. ¶ 96. In their view, Defendants used "deliberate misinformation" to keep Adams from acting as President, *id.* ¶ 96, and "den[ied] Plaintiff Adams any access to future elections in order to thwart any ability to influence the future political direction of the Union." *Id.* ¶ 97. Plaintiffs also allege that AFSCME's Judicial Panel conducted evidentiary hearings that "exceeded constitutional constraints under the Constitutions and By-laws of ACE and AFSCME" and issued two rulings against Adams without "constitutional authority." *Id.* ¶ 91. These somewhat-cryptic claims all seem to pertain to Plaintiffs' assertion that she properly entered into a $5,000 retainer fee agreement on behalf of Local 2250, in response to which Defendants used her actions as pretense to file complaints against her, hold evidentiary hearings, and issue rulings to hold her liable for the retainer fee, oust her from office for misconduct, and deny her the right to seek a new position. At best, through these allegations, Plaintiffs claim that Defendants denied Adams her "'equal right to run for and hold office'" and her "'right to a fair trial with strict adherence to due process'" under the AFSCME Constitution. Plaintiffs also claim that

"AFSCME International and Local 2250 . . . [f]ail[ed] to administer over eighty (80) pending Member grievances on their merits."  *Id.* ¶ 96.

AFSCME contends that these conclusory allegations fail to state a claim against it because "Plaintiffs . . . fail to allege any facts to explain how these various provisions are relevant to this case or to suggest that *AFSCME* breached any of these provisions."  AFSCME's Mem. 13 (emphasis added).  Plaintiffs concede that AFSCME exerted only "physically remote managerial control" with regard to "the tainted presidential election [and] the sham charges against an officer of AFSCME's local affiliate[]," but insist that Local 2250's actions were not "unilateral" because "AFSCME was aware of its affiliate's mounting record of unprocessed grievances, idling plans to oust the hostile faction assisted by the activist Adams and conduct of tainted votes yet continued to indirectly and directly participate in, and publicly endorse, support and encourage Local 2250's multiple fiduciary breaches."  Pls.' Opp'n to AFSCME 11 (citation omitted).  Plaintiffs argue that AFSCME should have "timely intervened following the Maryland District Court's highlighting of the impropriety of the local's Judicial Panel rulings."  Pls.' Proposed Surreply to AFSCME's Mot. 9.

### 1. Vicarious liability

In *Carbon Fuel Co. v. United Mine Workers of America*, in the context of responsibility for unauthorized strikes by local union members, the Supreme Court considered the liability of an international union for a local union's "*unilateral* actions which are concededly in violation of the locals' responsibilities under the contract." 444 U.S. 216, 216 n.5 (1979) (emphasis added). The Supreme Court held that "[i]n the face of Congress' clear statement of the limits of an international union's legal responsibility for the acts of one of its local unions [by requiring proof of agency], it would be anomalous to hold that an international is nonetheless liable for its failure

to take certain steps in response to actions of the local." *Id.* at 217–18. The Court declined to "impos[e] an obligation" on the international union, which had entered into an agreement, "to use reasonable means to control the locals' actions in contravention of that agreement," when there was no evidence that the international union had "instigated, supported, ratified, or encouraged any of the [locals' actions]." *Id.* at 218.

Significantly, the *Carbon Fuel Co.* Court observed that the international union would be liable "for any *authorized* [action] if such [action] violate[d] any term of the contract, whether express or implied." *Id.* at 216 n.5 (emphasis added); *see Westmoreland Coal Co. v. Int'l Union, United Mine Workers of Am.*, 910 F.2d 130, 136 (4th Cir. 1990) (noting that the *Carbon Fuel Co.* Court "was careful to distinguish" when an international union "neither instigates, supports, ratifies, nor encourages" a local union's actions and therefore "cannot be held liable for the actions of the locals" from when "a local union takes actions, authorized by the parents union, which violate a contract"); *Sine v. Local No. 992, Int'l Bhd. of Teamsters*, 730 F.2d 964, 966 (4th Cir. 1984) ("In *Carbon Fuel Co.,* 444 U.S. at 216–18, the Court recognized that Congress took care to construct a shield that limits an international union's legal responsibility for the acts of one of its locals. As *Carbon Fuel Co.* points out, the international is not liable under § 301 for its failure to prevent the local from breaching the local's contractual responsibilities."). Thus, it is clear that AFSCME is not liable for any conduct by the Local 2250 Defendants that it did not authorize, and the issue is whether Plaintiffs sufficiently alleged facts demonstrating that AFSCME authorized Local 2250's actions, or if Plaintiffs sufficiently alleged other conduct by AFSCME in breach of its constitution. *See Carbon Fuel Co.*, 444 U.S. at 216 n.5, 218.

Plaintiffs cite twenty-seven paragraphs in the Amended Complaint in support of their contention that AFSCME "participate[d] in, and publicly endorse[d], support[ed] and

encourage[d] Local 2250's *multiple fiduciary breaches*." Pls.' Opp'n to AFSCME 11 (emphasis added) (citing Am. Compl. ¶¶ 4, 26, 54, 59, 64, 66–68, 73–75, 86, 92–94, 96, 103–07, 116, 155–58, 161). Notably, they do not identify any allegation that AFSCME authorized Local 2250's purported *constitutional breaches*, which are the subject of this claim. Paragraph 4 states that, pursuant to the ACE-AFSCME Agreement, AFSCME would have "close supervision of local affiliates in the public sector." *See also* Am. Compl. ¶ 5 (stating that, under the Ace-AFSCME Agreement, Local 2250 would "retain[] exclusive authority to establish its own bargaining and other organizational goals and conduct its affairs in accordance with its own internal policies, while preserving AFSCME's close supervision of local affiliates in the public sector"). Yet, the ACE-AFSCME Agreement does not refer to "close supervision"; rather, it provides that "ACE retains exclusive authority to establish its own bargaining and other organizational goals and generally carry on its affairs in accordance with its own policies." ACE-AFSCME Agr. ¶ 5, ECF No. 34-4.

Paragraph 4 also generally alleges (without factual specificity) "concerted conduct" by AFSCME and Local 2250. This conclusory statement is not sufficient to impose liability on AFSCME. *See Iqbal*, 556 U.S. at 678–79. Insofar as Plaintiffs argue that AFSCME should have "timely intervened following the Maryland District Court's highlighting of the impropriety of the local's Judicial Panel rulings," Pls.' Proposed Surreply to AFSCME's Mot. 9, I note that, contrary to Plaintiffs' assertion, the state court did not highlight any "error" with regard to the Executive Board or Panel decisions. Rather, it ordered Local 2250 to pay the retainer fee based on Adams's "apparent authority" to enter into the retainer agreement, while acknowledging that the Panel found that Adams lacked authority to enter into the retainer agreement and stating that how that finding "plays out between the union administration and the union president [was] not

the issue before the Court."  State Ct. Tr. 5.  And, none of the other paragraphs include any allegations that AFSCME "instigated, supported, ratified, or encouraged" or otherwise "authorized" the Local 2250 Defendants' alleged actions in contravention of the unions' constitutions and bylaws.  *See Carbon Fuel Co.*, 444 U.S. at 218.  Therefore, on these factually barren allegations, AFSCME cannot be liable for the Local 2250 Defendants' alleged acts.  *See id.*

### 2.  Actions by AFSCME

Insofar as Plaintiffs claim that AFSCME itself failed to act in response to member grievances, e.g., Am. Compl. ¶¶ 54, 59, 96, I note that "Local 2250 was the exclusive collective bargaining agent for its members," *id.* ¶ 48; *see id.* ¶ 6 ("The Board of Education of Prince George's County . . . recognizes . . . Local 2250 . . . as sole and exclusive bargaining agent for the employees").  Thus, this purported breach is based on the acts of Local 2250, not AFSCME.  Plaintiffs argue that they sufficiently alleged that AFSCME "ratif[ied] the local's handling of the grievances of Todd Kingman and Terry Allen." Pls.' Proposed Surreply to AFSCME's Mot. 4 (citing Am. Compl. ¶¶ 53, 58–59, 64).  But, a careful reading of the Amended Complaint reveals that Plaintiffs do not allege that AFSCME "instigated, supported, ratified, or encouraged" or otherwise "authorized" the Local 2250 Defendants' alleged failure to respond to member grievances.  *See Carbon Fuel Co.*, 444 U.S. at 218.  Plaintiffs simply allege that AFSCME did not respond to the grievances.  *See* Am. Compl. ¶¶ 54, 59, 96(a).  And, in *Carbon Fuel*, where "Petitioner ma[de] the distinct argument that [the Supreme Court] should hold the International liable for its *own* failure to respond to the locals' strike," the Court disagreed, reasoning that "it would be anomalous to hold that an international is . . . liable for its failure to take certain steps in response to actions of the local." *Carbon Fuel Co.*, 444 U.S. at 217–18.

Plaintiffs also insist that AFSCME had "control of elections." *Id.* at 6 (citing Am. Compl. ¶¶ 26–27). But this is argument, not well pleaded facts. Paragraphs 26 and 27 do not allege that AFSCME had control over, or indeed any role in the elections. *See* Am. Compl. ¶¶ 26–27.

Plaintiffs do allege one role that AFSCME itself played, as it was AFSCME's Judicial Panel that heard, investigated, and decided the propriety of Adams's actions and assessed penalties. Specifically, Plaintiffs allege that these actions breached AFSCME's Constitution and Bylaws because the evidentiary hearings "exceeded constitutional constraints" and the Panel lacked "constitutional authority" to issue the two rulings against Adams. Am. Compl. ¶ 91. As best I can discern, Plaintiffs are claiming that AFSCME did not give her a fair trial, violated due process, and exceeded its authority through the Panel's decisions, in breach of its Constitution, by denying her rights under the Constitution to continue to hold office as president and to run for a new office. *See id.* ¶¶ 91, 94.

AFSCME argues that Plaintiffs have not provided "any supporting facts" for these allegations, insisting that it did not deny Adams her "'right to a fair trial with strict adherence to due process,'" as she "was given notice of written charges submitted by the charging party" and "had the opportunity to testify and introduce evidence on her own behalf at both hearings." AFSCME's Mem. 14. In their Opposition, Plaintiffs concede that there were "various conforming due process protections that were provided by the Judicial Panel at the sanctions hearing," but contend that these instances of providing due process do not "totally cure[]" AFSCME's "continuously blatant disregard for the constitutional boundaries set forth in its charter at all material times." Pls.' Opp'n to AFSCME 17.

Certainly, the Panel ordered Adams to pay restitution, removed Adams from office, suspended her from seeking another office for four years, and ordered her expulsion if she failed to pay the restitution.  But, it acted in response to "[h]er failure to abide by legally authorized decisions" of the Local 2250 Executive Board and the Panel itself.  Apr. 29, 2014 Panel Dec. 10.

The AFSCME Constitution provides

> If the International President shall have reasonable cause to believe that a subordinate body or the officers, employees, or members thereof are . . . *acting in violation of this Constitution or of any lawful order of the Convention*. . ., and that such conduct cannot or will not be immediately remedied by the subordinate body, *the International President shall refer the matter to the Judicial Panel for hearing and/or investigation* in the manner hereinafter provided and shall notify the subordinate body.

AFSCME Const. art IX, § 38 (emphases added).   It further provides that, following an investigation and a hearing, "[i]f the Judicial Panel finds that penalties should be imposed, it may assess any one or more of the penalties provided in Article X, Section 15, of this Constitution."

AFSCME Const. art. XI, § 7.  The possible penalties under § 15 include

> C. Full or partial restitution, where the consequences of the offense can be measured in material terms.
>
> D. Removal from office in the union at the level at which the charges originate.
>
> E. Suspension from the right to hold any elected position at the level at which the charges originate for a period not to exceed four years.
>
> F. Suspension from the right to hold or seek any elected position at any level of the union for a period not to exceed four years.
>
> G. Suspension from membership for a specified period of time, not to exceed two years.
>
> H. Expulsion from membership. . . .

AFSCME Const. art. X, § 15.  Thus, ASFCME International had the authority for the actions it took, through the Panel, with regard to Adams.   Plaintiffs have failed to identify any constitutional provision that AFSCME breached. Therefore, they fail to state a claim for breach

of the AFSCME Constitution and Bylaws as to AFSCME.  *See Hoosier*, 383 U.S. at 705 n.7;

*Tucker*, 83 F. Supp. 3d at 655; *Kumar*, 17 A.3d at 749.

### Counts II and III – Breach of Duty of Fair Representation under LMRA and NLRA

In Count II, for "Violation of LMRA § 301/Hybrid Action Pursuant to 29 U.S.C. § 185,"

and Count III, for "Violation of NLRA, 29 U.S.C. § 158 Section 8(b)(1)(A)," Plaintiffs claim

that Defendants breached their duty of fair representation to Plaintiffs.  Specifically, Defendants

"fail[ed] to protect [their] member's rights and disregard[ed] employer breaches of contractual

obligations to Plaintiff employees under the collective bargaining agreement." Am. Compl. ¶ 74.

Additionally, they "fail[ed] to administer Plaintiffs' grievances in good faith and in a timely

manner based on Plaintiffs' political affiliation with Plaintiff Adams and refus[ed] to adequately

pursue meritorious claims filed by . . . other Members of Local 2250 against their employers,

based on arbitrary political motivations and subjective hostility toward Adams."  *Id.* ¶¶ 83, 87.

As Defendants note, "[t]he gravamen of both Counts II and III is that all Defendants breached

their duty of fair representation to the Plaintiffs by failing to process Plaintiffs' grievances

against their employer."  AFSCME's Mem. 20.

A "hybrid § 301/fair representation action . . . formally comprise[s] two causes of action."

*Reed v. United Transp. Union*, 488 U.S. 319, 328 (1989).  The first is a claim for violation of

§ 301 of the LMRA, based on an alleged breach of the collective-bargaining agreement.  The

second is a "claim[] that the union breached its duty of fair representation, which this Court has

implied from the scheme of the NLRA, by mishandling the ensuing grievance-and-arbitration

proceedings."  *Id.* Although the first is an action against the employer and the second is against

the union, "'the two claims are inextricably interdependent,'" and "''[t]o prevail against either

the company or the Union, . . . [employee-plaintiffs] must not only show that [the employer's

action] was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."'" *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983) (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981) (citation omitted)).  Even if the employees sue only the employer or the union, "the case he must prove is the same." *Id.*

Section 8(b)(1)(A) of the NLRA "'prohibits labor organizations, when acting in a statutory representative capacity, from taking action against any employee upon considerations or classifications which are irrelevant, invidious, or unfair.'" *Vaca v. Sipes*, 386 U.S. 171, 178, (1967) (quoting 140 N.L.R.B. 185).  Thus, a union that is the exclusive bargaining representative for the employees in the union owes a statutory duty of fair representation to those employees. *Id.* at 177.

> The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." The duty stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law."

*DelCostello*, 462 U.S. at 165 (quoting *Vaca*, 386 U.S. at 177, 182; other citations omitted).

To state a claim for breach of duty of fair representation, workers typically must allege that the defendant is their "*exclusive* bargaining representative." *See Vaca*, 386 U.S. at 177 (emphasis added); *Beck v. Commc'ns Workers of Am.*, 800 F.2d 1280, 1287 (4th Cir. 1986) (noting that it is "[t]he union's *exclusive* bargaining status, which involves a power to act on behalf of all employees," that "necessarily creates a relationship of trust" (emphasis added)). Here, Plaintiffs allege that Local 2250 is "the sole and exclusive bargaining agent for the

employees." *See* Am. Compl. ¶¶ 6, 48.  Therefore, accepting the well-pleaded factual allegations,

AFSCME is not Local 2250's bargaining representative.  *See id.*  On this basis, AFSCME insists

that Plaintiffs cannot state a claim for breach of duty of fair representation against it. AFSCME's

Mem. 20–21.

Plaintiffs counter that "[i]nternationals have been held to owe a duty of fair

representation directly to members of its locals where actions of the international directly affect

the collective bargaining rights of union members or supplant the autonomy of the local."  Pls.'

Opp'n to AFSCME 6.  They argue that they sufficiently alleged that AFSCME caused Local

2250 to breach its duty of fair representation "by ratifying the local's handling of the grievances

of Todd Kingman and Terry Allen." Pls.' Proposed Surreply to AFSCME's Mot. 4 (citing Am.

Compl. ¶¶ 53, 58–59, 64).  Yet, as discussed above, Plaintiffs allege not that AFSCME "ratified"

Local 2250's actions, but rather that AFSCME failed to act, which is not sufficient to impose

liability.  *See Carbon Fuel Co.*, 444 U.S. at 217–18.

The case on which Plaintiffs rely to extend the duty to the international union, *Alexander

v. International Union of Operating Engineers, AFL-CIO*, 624 F.2d 1235 (5th Cir. 1980), is

inapposite.  There, the local union defendant was "the exclusive bargaining representative of

persons who operate and maintain all equipment covered by the engineer's craft agreement

between [an association of general contractors and a trade council]."  *Id.* at 1237.  The plaintiffs

sued the local and international unions for breach of duty of fair representation after the local

union entered into an agreement ("Redrock project agreement") with "special standards that were

less favorable to the employees than the same standards contained in the engineers craft

agreement."  *Id.*  Significantly, the president of the international union had sent a telegram to the

local union, "ordering the business manager to sign the Redrock project agreement."  *Id.*  The

Fifth Circuit held that the international union "owed a duty to the local's membership not to cause the local to breach its duty of fair representation," even though "the international was not formally designated the employees' bargaining agent." *Id.* at 1241. The court reasoned that that the international union defendant "owed a duty to the local's membership not to cause the local to breach its duty of fair representation" because "the international president's directive had the effect of supplanting the authority vested in the local's business manager to assent to agreements on the membership's behalf." *Id.* Here, Plaintiffs have not alleged any such directive from AFSCME to provide a basis for extending liability to the international union. *See id.* Consequently, Plaintiffs fail to state a claim against AFSCME in Count II or Count III. *See Vaca*, 386 U.S. at 177; *Alexander*, 624 F.2d at 1241.

### Counts V and VI – Violations of the LMRDA, 29 U.S.C. §§ 411(a)(1), (2) (5)

In Counts V and VI, Plaintiffs claims that Defendants violated the LMRDA, specifically, §§ 411(a)(1), (2) (5). These sections provide:

> (a)(1) Equal rights
> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
>
> (2) Freedom of speech and assembly
>
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

. . .

(5) Safeguards against improper disciplinary action
No member of any labor organization may be fined, suspended, expelled, or
otherwise disciplined except for nonpayment of dues by such organization or by
any officer thereof unless such member has been (A) served with written specific
charges; (B) given a reasonable time to prepare his defense; (C) afforded a full
and fair hearing.

29 U.S.C. § 411(a)(1), (2), (5).

Plaintiffs claim that Defendants violated these statutes by "utilizing Union funds to promulgate distorted and false claims concerning . . . Adams" before and after her election, Am. Compl. ¶ 107(a), and then "improper[ly] sanctioning" Adams, *id.* ¶ 105; *see id.* ¶¶ 107(b), (c), (d), 108(a). They also claim that Defendants "improperly expended vast amounts of union funds and resources campaigning to discredit plaintiffs." *Id.* ¶ 107(f); *see id.* ¶ 108(a). Plaintiffs also claim that Defendants violated the LMRDA by "fail[ing] and refus[ing] to investigate and process complaints of inappropriate conduct and financial improprieties by the defendants committed on behalf of a former wing of the ACE Executive Board." *Id.* ¶ 107(e). Additionally, they claim that Defendants "intimidate[ed] pro-Adams supporters," "[r]evok[ed] the results of a legitimate presidential election" and "suspended and/or expelled Plaintiffs by fiat," without giving her "a fair hearing or appeal." *Id.* ¶¶ 124–25.

AFSCME's argument here is similar to its argument with regard to Count IV: Plaintiffs have not alleged conduct by AFSCME, as opposed to the Local 2250 Defendants, that violates the LMRDA. AFSCME's Mem. 17–18. And, Plaintiffs' counterargument likewise is similar: "[t]he LMRDA count does not rest solely on the Panel rulings," and "[t]he Amended Complaint alleges facts sufficient to establish for purposes of the [LMRDA] that AFSCME stands in a common law agency relationship vis-a-vis the Local." Pls.' Opp'n to AFSCME 18. But, again, Plaintiffs have not alleged any authorization of the Local 2250 Defendants' actions by AFSCME

sufficient to impose liability. *See Carbon Fuel Co.*, 444 U.S. at 218. Moreover, Plaintiffs have

not alleged sufficiently that the Panel's actions violate any of these statutory provisions because,

as discussed, the Panel's hearing, investigation, and decision accord with due process.

Two allegations remain: Defendants' improper use of union funds to "discredit" Adams,

and Defendants' failure to investigate claims that it was Defendants who engaged in

"inappropriate conduct and financial improprieties." But, beyond the use of the word

"Defendants" to encompass Local 2250 and AFSCME as the actors, Plaintiffs have failed to

allege any conduct by AFSCME itself or explain how AFSCME was involved in the alleged

conduct, when Plaintiffs attribute all specific actions to the Executive Board Defendants or Local

2250. Thus, with regard to ASFCME International, these allegations do not "allow[] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*,

556 U.S. at 678. Plaintiffs have not stated a claim for a violation of LMRDA, 29 U.S.C.

§ 411(a)(1), (2) or (5).

### Count VII – Breach of Fiduciary Duties under the LMRDA and Common Law

Plaintiffs claim that Defendants breached the fiduciary duties they owed Plaintiffs under

the LMRDA, 29 U.S.C. § 501(a), and common law. Am. Compl. ¶ 127. Section 501(a)

provides:

> *The officers, agents, shop stewards, and other representatives* of a labor
> organization occupy positions of trust in relation to such organization and its
> members as a group. It is, therefore, *the duty of each such person*, taking into
> account the special problems and functions of a labor organization, to hold its
> money and property solely for the benefit of the organization and its members and
> to manage, invest, and expend the same in accordance with its constitution and
> bylaws and any resolutions of the governing bodies adopted thereunder, to refrain
> from dealing with such organization as an adverse party or in behalf of an adverse
> party in any matter connected with his duties and from holding or acquiring any
> pecuniary or personal interest which conflicts with the interests of such
> organization, and to account to the organization for any profit received by him in

whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

29 U.S.C. § 501(a) (emphasis added).

Noting that it "is a labor organization, not an individual representative of a labor organization," AFSCME argues that Plaintiffs' statutory fiduciary duty claim against it fails because, "[b]y its terms, § 501(a) applies only to 'officers, agents, shop stewards, and other representatives of a labor organization,'" and § 501(b) "provides a right of action only against such individual union representatives." AFSCME's Mem. 21 (quoting 29 U.S.C. § 501(a)). Indeed, § 501(a) imposes a duty on "each such person," and not the union itself. *See* 29 U.S.C. § 501(a). The Fourth Circuit has observed that "Title V of the Act imposes a fiduciary duty *on union officials* to their union and its members." *Thomas v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 201 F.3d 517, 519 (4th Cir. 2000) (citing 29 U.S.C. § 501(a); emphasis added). Other circuits agree that the fiduciary duty does not extend to unions. *See, e.g.*, *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) (affirming dismissal of local and international union as defendants in § 501(a) suit because neither properly could be joined); *Stelling v. Int'l Bhd. of Elec. Workers Local No. 1547*, 587 F.2d 1379, 1385 n.6 (9th Cir. 1978) ("Section 501 does not provide for suit against a labor organization or an employer."); *Pignotti v. Local #3, Sheet Workers' Int'l Ass'n*, 477 F.2d 825, 832 (8th Cir. 1973) ("[N]either the International Association nor Local No. 3 have violated § 501 as that section imposes liability only on the individual union officials.").

Plaintiffs counter that "Count VII survives in light of federal court precedent imposing common law fiduciary duties on the parent." Pls.' Opp'n to AFSCME 21. Stated differently,

Plaintiffs seek to hold AFSCME liable for Local 2250's alleged breaches of fiduciary duty. Yet, as discussed above, Local 2250 is not subject to the LMRDA because it represents only public employees. Therefore, there can be no breach by Local 2250 under the LMRDA for which AFSCME can be liable under agency principles. *See Wright v. Balt. Teachers Union*, 369 F. Supp. 848 (D. Md. 1974)). Moreover, as also discussed above, agency principles do not apply unless AFSCME authorized Local 2250's actions. *See Carbon Fuel Co.*, 444 U.S. at 217–18. Plaintiffs have not alleged adequately that AFSCME authorized Local 2250's purported breach of fiduciary duty. Consequently, Plaintiffs fail to state a claim for breach of fiduciary duty under the LMRDA.

## Restraining Order

In seeking to file motions to dismiss Plaintiffs' original Complaint, Defendants contended that Plaintiffs' claim for "Restraining Order" was subject to dismissal because "a restraining order is a remedy, not an independent cause of action." AFSCME's Pre-Mot. Request 3; *see* Local's Pre-Mot. Request 2 n.1. Even though Plaintiffs had the opportunity to amend to cure the alleged deficiencies, Plaintiffs filed their Amended Complaint with Count IX styled as "Restraining Order," and in it they seek "a restraining order suspending the result of the election, [and] the suspension and expulsion of Shirley Adams while the civil action is pending and other relief is pending against the Defendants." Am. Compl. ¶ 163. Defendants move for dismissal on the same basis asserted in their pre-motion letters, that a restraining order simply is not a cause of action. AFSCME's Mem. 24; Local's Mem. 3 n.3. Plaintiffs do not oppose their motions as to this claim specifically. Indeed, a restraining order "is not a cause of action but rather an equitable remedy." *Sherstad v. Countrywide Home Loans, Inc*., 2010 WL 3021614, at *2 (D. Nev. July 29, 2010); *see Centeno v. Mortgage Electronic Registration Sys., Inc.*, 2012 WL

3730528, at *4 (D. Nev. Aug. 28, 2012) (same); *Lester v. J.P. Morgan Chase Bank*, No. C 12-05491 LB, 2013 WL 3146790, at *6 (N.D. Cal. June 18, 2013) (same); *Montes v. Quality Loan Serv. Corp.*, No. CV 09-5864 PSG (RCX), 2010 WL 114485, at *5 (C.D. Cal. Jan. 5, 2010) (same). Thus, although Plaintiffs may seek a temporary restraining order or preliminary injunction pursuant to Fed. R. Civ. P. 65 or seek injunctive relief in their Amended Complaint, they have no cause of action for a restraining order, and Count IX must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

## **Common Law Claims**

As noted, in Count I, Plaintiffs claim that AFSCME and Local 2250 "breached the contract entered into with the Plaintiffs . . . ('labor contract')," as well as its implied warranty of good fair and fair dealing, and "violated the terms of the ACE-AFSCME Agreement." Am. Compl. ¶¶ 66-69. AFSCME argues that this breach of contract claim is "duplicative" of the claim in Count IV. AFSCME's Mem. 12. As AFSCME reads the Amended Complaint, both counts allege breaches of the unions' constitutions and bylaws, although Count I "rest[s] on the vague and rather confusing legal theory that . . . the AFSCME Constitution should be read to contain an 'implied warranty' that purportedly was breached by AFSCME here." *Id.* at 14–15.

Plaintiffs counter that, in Count I, it is "the ACE-AFSCME Agreement in effect which is alleged to have been breached," not the unions' constitutions and bylaws, which are the subject of Count IV, or "the labor contract with employees," which they acknowledge but do not contend is relevant to the breach of contract claims. Pls.' Opp'n to AFSCME 12 (citing Am. Compl. ¶¶ 3, 4, 5, 68). They insist that their "factual allegations with respect to Count I state a valid claim for breach of the ACE-AFSCME Agreement apart from the allegation that AFSCME engaged in prohibited conduct in violation of both constitutions." *Id.* at 14 (citing Am. Compl.

¶¶ 65–70).  Thus, it is clear that Count I pertains to the unions' obligations under the ACE-AFSCME Agreement, not the constitutions and bylaws or the "labor contract with employees."  *See* Am. Compl. ¶¶ 66-69; Pls.' Opp'n to AFSCME 12, 14.  Because Local 2250 is not a "labor organization" for purposes of the LMRA, this is a common law breach of contract claim, even against AFSCME.  *See Wooddell*, 502 U.S. at 98, 100; *Taylor*, 438 F. Supp. 2d at 581.

Count IV, while not viable against AFSCME or the Local 2250 Defendants under the LMRA, also presents a common law claims for breach of contract against the Local 2250 Defendants, as discussed previously.  Additionally, Plaintiffs present common law claims against all Defendants for breach of fiduciary duties in Count VII, unjust enrichment in Count VIII, and abuse of process in Count IX.

> Pursuant to 28 U.S.C. § 1367(c), the court has discretion to retain or dismiss nonfederal claims where, as here, the federal basis of the action is no longer applicable. District courts in the Fourth Circuit "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise discretion, courts consider factors such as the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id. (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Ultimately, supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* (quoting *Carnegie–Mellon Univ.*, 484 U.S. at 350).

*Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 897 (D. Md. 2011).  Because all other claims against the Local 2250 Defendants must be dismissed for lack of jurisdiction, and all other claims against AFSCME are subject to dismissal for failure to state a claim, such that "the federal basis of th[is] action is no longer applicable," I will exercise my discretion to dismiss the nonfederal claims.  *See id.*

## Conclusion

Plaintiffs' Motion for Leave to File Sur-reply, ECF No. 44, with regard to AFSCME's Motion to Dismiss, is denied in part and granted in part.  Insofar as Plaintiff's proposed Surreply, ECF No. 44-1, addresses new arguments that AFSCME raised in its reply, it is accepted as filed. Plaintiffs' Motion for Leave to File Sur-reply, ECF No. 50, with regard to the Local 2250 Defendants' Motion to Dismiss, is denied.

Defendants' motions to dismiss, ECF No. 33 and 34, are granted.  The statutory claims against the Local 2250 Defendants are dismissed for lack of jurisdiction. The federal law claims against AFSCME and the restraining order claim are dismissed for failure to state a claim. These dismissals are with prejudice, given that Plaintiffs already had the opportunity to amend, with the understanding that any dismissal would be with prejudice.  Further, I will decline to exercise supplemental jurisdiction over the common law claims against Defendants.  I will remand the common law claims to the Circuit Court for Prince George's County. *See Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) ("[U]nder the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met.").

A separate order will issue.

Date: <u>March 1, 2016</u>                                         <u>        /S/        </u>

Paul W. Grimm
United States District Judge